Nunzio Corsino *v.* Roger M. Grover, Building
Inspector of the Town of Old Lyme, et al.

Nunzio Corsino *v.* Zoning Commission of the
Town of Old Lyme

Baldwin, C. J., King, Murphy, Mellitz and Shea, Js.

Argued February 10—decided April 20, 1961

*Charles Suisman,* with whom, on the brief, was *James F. Brennan, Jr.,* for the appellant (plaintiff) in both cases.

*Edmund W. O'Brien,* for the appellees (defendants) in both cases.

BALDWIN, C. J.  In November, 1958, the plaintiff instituted an action in the Court of Common Pleas against Roger M. Grover, building inspector of Old Lyme, and the zoning commission of Old Lyme.  He sought a declaratory judgment respecting the application and validity of certain zoning regulations as they affected lots in the Miami Beach section of Old Lyme and his right to a building permit to erect a cottage on a lot at 38 Washington Avenue in that development.  He also sought a permanent

injunction against the enforcement of the zoning regulations and to compel the issuance of the permit. In March, 1959, in a second action, he appealed directly to the Court of Common Pleas from the enactment by the zoning commission of certain zoning regulations. General Statutes §§ 8-8—8-10. He claimed that the commission had acted arbitrarily and unreasonably and that it had violated statutory mandates and deprived him of constitutional rights. The two actions were tried together, although separate memorandums of decision were filed. The court rendered a judgment for the defendants in the first action and dismissed the appeal in the second. The plaintiff has appealed from both judgments to this court. By stipulation, the appeals have been combined. Practice Book § 382.

Ordinarily, an appeal from a zoning authority is determined upon the record of that authority, but when, as in this case, there has been no stenographic report or mechanical recording, the trial court may receive evidence in order to determine what facts and considerations were, presumptively, in the minds of the commission. General Statutes §§ 8-8— 8-10; *Schultz* v. *Zoning Board of Appeals,* 144 Conn. 332, 334, 130 A.2d 789; *Yurdin* v. *Town Plan & Zoning Commission,* 145 Conn. 416, 421, 143 A.2d 639. Then too, since both cases were tried as one, the evidence adduced properly could be considered as applicable to both.

The facts found by the trial court can be stated in summary as follows: Between 1943 and 1947, the plaintiff purchased four contiguous tracts of land on the shore front in Old Lyme. In 1949, the legislature chartered the Miami Beach Association; its territory was these four tracts. 25 Spec. Laws 1130.

In 1943, 1947 and 1954, the plaintiff filed subdivision plans for this land in the town clerk's office. At these times, there were no subdivision regulations in effect in Old Lyme. See General Statutes § 8-25. The plaintiff proceeded to develop the land for the erection of summer cottages. He spent in excess of $128,000 to erect a permanent office building, grade the land, make roads and install a water supply system. This system is operative in the summer only. The layout includes 448 building lots, of which 179 have no buildings or improvements on them and belong to the plaintiff. The lots vary in size from less than 4000 square feet to between 6000 and 8000 square feet. There are several other shore-front developments in Old Lyme which contain lots similar in size and design to those in Miami Beach. The plaintiff, a builder, has erected many summer cottages on lots which he has sold. Old Lyme covers 26.4 square miles. It has no public water supply and no sanitary sewer system.

Zoning regulations were first adopted in Old Lyme in 1940, pursuant to what is now General Statutes § 8-1. On January 2, 1957, the zoning commission made an extensive revision of the regulations, effective January 21, 1957. Since that time, Miami Beach has been located in what is designated as an R-10 residence district, which requires a minimum lot area of 10,000 square feet. Old Lyme Zoning Regs. §§ 2.1, 4.2 (Jan. 21, 1957). All of the lots in Miami Beach have less than the minimum area. The 1957 regulations allowed the construction of a permitted building, or the establishment of a permitted use, on any lot "which at the time of the adoption of these regulations and continuously thereafter was owned separately from any adjoining lot as evidenced by deed" of record. Id. § 3.10.

Only single-family dwellings could be built. Ibid.
The 1957 regulations also allowed the continuance
of any nonconforming use. Id. § 14.1. On Decem-
ber 9, 1957, § 3.10 of the regulations was amended.
Under the section as amended, it was necessary to
obtain an exception from the zoning board of ap-
peals in order to use an undersized lot. The ex-
ception could be given only with respect to a lot
owned separately on December 11, 1957, and con-
tinuously thereafter. The exception could affect
lot area only and had to be in conformance with the
sanitary code of the town and the general purpose
and intent of the zoning regulations. Many excep-
tions were thereafter granted. Section 3.10 was
again amended, effective August 12, 1958. Old Lyme
Zoning Regs. §§ 3.10.1–3.10.4 (Aug. 12, 1958). The
effect of the amendment was to establish four cate-
gories of lots, those ranging from 8000 to 10,000
square feet in area, those from 6000 to 8000 square
feet, those from 4000 to 6000 square feet, and those
under 4000 square feet. Lots in the first category
were given an automatic exception; § 3.10.2.1; those
in the next two categories had to meet certain
standards, progressively more severe as lot area
decreased, to qualify for an exception; §§ 3.10.2.2,
3.10.2.3; and the granting of any exceptions for lots
having an area less than 4000 square feet was pro-
hibited. Id. § 3.10.3. Prior to March 12, 1959, the
regulations described a nonconforming use as one
which does not "conform to the regulations pre-
scribed for the district in which it is situated." Id.
§ 1.17. Effective March 12, 1959, the regulations
were re-enacted, and under them the definition of
nonconforming use was changed to exclude from
the definition a vacant or unimproved lot unless the
location and size of the lot, as designated on a

recorded plan, was approved by the planning commission subsequent to January 2, 1957, and a building was erected on the lot within ten years after the date of the approval. Old Lyme Zoning Regs. § 1.17 (Mar. 12, 1959).

The court found that the character and use of the land in R-10 zones, particularly where the plaintiff's land is located, had not changed subsequent to the adoption of the regulations on January 21, 1957. Between January 2, 1957, and March 7, 1959, the zoning of resort areas in Old Lyme was discussed at meetings of the Old Lyme zoning authorities. Pursuant to an ordinance of the town adopted on April 20, 1957, a new zoning commission was elected on October 7, 1957. It employed an expert on sewage disposal systems who made percolation tests in nine areas of Old Lyme, including Miami Beach. He advised that a minimum area of 10,000 square feet should be required for lots where neither a central water system nor sewers existed. Miami Beach, the commission was told, was only a few feet above sea level and was partly filled land, there were several water supply systems, and, at some places, the ground water level was within a few inches of the surface. A professional planner who had previously been employed had reported that unless the development of the beach areas was controlled, their rapid growth would give rise to serious problems of sanitation, schooling and traffic. The cottages at Miami Beach were so constructed that they could be occupied in the winter. Ten were already so occupied. Their water supply came from their own wells or neighbors' wells. It could be expected that there would be a gradual increase in year-round occupancy. When the amendment of § 3.10 became effec-

tive on August 12, 1958, the plaintiff had under sale, on an instalment payment plan, nineteen lots, each of which was less than 6000 square feet in area. No deeds had passed. Owing to the change in the zoning regulations, payments were suspended. One suit was instituted to recover the payments made. Other suits were threatened. On October 30, 1958, the plaintiff applied to the defendant building inspector for a permit to erect a cottage on the lot at 38 Washington Avenue, Miami Beach. The lot contained 3480 square feet and was not one the plaintiff had contracted to sell. The permit was refused.

The defendant zoning commission has assigned error in the finding. Practice Book § 393. It asks that the following facts be found: On January 14, 1957, Antoinette Corsino, the plaintiff's daughter, acting under a power of attorney, quitclaimed to Carmelina Corsino, the plaintiff's wife, 115 lots at Miami Beach. This conveyance prevented the consolidation of any adjoining lots by a single owner because the conveyance divided the unsold lots between the plaintiff and his wife in such a way that neither of them owned an adjoining lot. Each lot had an area of about 4000 square feet. The deed was recorded January 15, 1957. It was subsequently confirmed by one executed by the plaintiff, dated May 24, 1957. This conveyance made it impossible for the plaintiff, without the consent of his wife, or for her, without the consent of the plaintiff, to combine individual lots or any parts of them in such a way as to make a lot having an area of more than 4000 square feet.

Corrections in a finding can be made if the trial court has refused to find a material fact which was an admitted or undisputed fact. Practice Book §§ 396, 397; Maltbie, Conn. App. Proc. § 158. It

must be established that the fact claimed was admitted or that its truth was conceded to be undisputed. *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 293, 141 A.2d 634; see *Chouinard* v. *Zoning Commission,* 139 Conn. 728, 730, 97 A.2d 562; *Dexter Yarn Co.* v. *American Fabrics Co.,* 102 Conn. 529, 541, 129 A. 527. The deeds under discussion were both recorded. The later one recited that its purpose was "to confirm the deed dated January 14, 1957 and recorded in Old Lyme Land Records, Volume 59, page 124-5." The recitals in these deeds, standing unchallenged, were admitted facts. It is true that the uncontradicted testimony of a witness does not make the facts to which he testifies necessarily undisputed. *Chouinard* v. *Zoning Commission,* supra. In the case at bar, however, the deeds and the map of Miami Beach offered by the plaintiff, together with his failure to give any explanation of the transaction, amount to a concession of the truth of the facts claimed by the commission. The finding is corrected to add them. It was the unusual division of the lots between the plaintiff and his wife which subsequently led to the conditions of which he complained.

The trial court's reason for rendering judgment for the defendants in the action for a declaratory judgment and an injunction was the failure of the plaintiff to exhaust his administrative remedies before resort to the courts. *Florentine* v. *Darien,* 142 Conn. 415, 426, 115 A.2d 328. The administrative remedies included an appeal to the zoning board of appeals from the denial of a building permit as well as an application to the board for a variance or an exception. Old Lyme Zoning Regs. §§ 15.3, 15.4, 3.10 (Aug. 12, 1958). When the plaintiff applied for a building permit to erect a cottage on a

lot of 3480 square feet in a zone where the regulations required a minimum area of 10,000 square feet, the defendant inspector had no choice but to deny the permit, unless he was to rule that the use proposed was permissible as a continuation of an existing nonconforming use. There had been no actual use of this lot. The proposed use was to erect a cottage costing $3500. A proposed use cannot constitute an existing nonconforming use. The use must be actual. *Fairlawns Cemetery Assn.* v. *Zoning Commission,* 138 Conn. 434, 444, 86 A.2d 74, and cases cited. The filing of the maps of Miami Beach showing the proposed layout of lots, none of which maps were approved or officially acted upon, could not constitute the lot in question a nonconforming use. *State ex rel. LaVoie* v. *Building Commission,* 135 Conn. 415, 419, 65 A.2d 165. So far as this lot was concerned, the plaintiff had done nothing to put it to use. See *New Britain* v. *Kilbourne,* 109 Conn. 422, 147 A. 124. It is hardly conceivable that, if the plaintiff had appealed to the zoning board of appeals from the denial of his application for a building permit, the board would have reversed the building inspector. If the plaintiff had applied, following the refusal of the building permit, for an exception, he would have found himself in collision with the regulations prohibiting any exception for lots less than 4000 square feet in area. Old Lyme Zoning Regs. § 3.10.3 (Aug. 12, 1958). Upon the facts of this case, it appears that any effort on the part of the plaintiff to secure administrative relief as provided in the zoning regulations would have availed him nothing. The law does not require the doing of a useless thing. *Federal Finance Co.* v. *Forman Properties, Inc.,* 135 Conn. 153, 158, 62 A.2d 516; 42 Am. Jur. 585, § 200.

In the first action, the plaintiff, in addition to asserting his own rights to a declaratory judgment and injunctive relief, has attempted to assert what he alleges are the vested rights of third persons who have purchased lots from him on the instalment plan but have not yet received deeds. These purchasers are not parties to the action, and their rights should not be declared. Practice Book § 277 (d); Maltbie, Conn. App. Proc. § 230. Nor could an injunction be decreed to enforce any rights they may have. See *Ackerman* v. *Union & New Haven Trust Co.*, 91 Conn. 500, 508, 100 A. 22. The same reasoning applies to the plaintiff's claims of invalidity of the regulations as they affect the lots owned by his wife, Carmelina. Unless the regulations of which the plaintiff complains on his own behalf are invalid, his application for a building permit, as hereinbefore shown, was properly denied. The trial court, in effect, refused to render a declaratory judgment or grant injunctive relief as prayed for in the first action. If this decision was correct, as it was if the determination in the second action that the regulations were valid stands, the fact that the trial court assigned an incorrect reason for its decision would not require a reversal of the judgment. *Chouinard* v. *Zoning Commission*, 139 Conn. 728, 732, 97 A.2d 562; *Hoffman* v. *Kelly*, 138 Conn. 614, 617, 88 A.2d 382. It is true that the plaintiff raised in the first action the issue of the validity of the regulations as they affected lots owned by him other than the one for which he sought a building permit. That issue was disposed of in the second case.

The plaintiff's claims of invalidity, made in both actions, are directed primarily toward the amendments to the earlier zoning regulations. The plain-

tiff asserts that there had been no change in the character and use of his land which warranted the amendments. The rule that a zoning board of appeals cannot reverse an earlier decision unless there are changed conditions does not necessarily apply to a zoning commission, which is essentially a legislative body. *Neuger* v. *Zoning Board,* 145 Conn. 625, 633, 145 A.2d 738; *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 596, 145 A.2d 597; *Yurdin* v. *Town Plan & Zoning Commission,* 145 Conn. 416, 420, 143 A.2d 639; *Suffield Heights Corporation* v. *Town Planning Commission,* 144 Conn. 425, 430, 133 A.2d 612. As a legislative body, the commission was under a duty reasonably to anticipate future conditions which could affect the public welfare adversely. *Winslow* v. *Zoning Board,* 143 Conn. 381, 390, 122 A.2d 789. This claim of the plaintiff fails.

General Statutes § 8-3 requires, the plaintiff asserts, that a zoning commission, whenever it makes a change in a zoning regulation or zone boundary, state upon its records its reasons for the change. This provision is directory only, and failure to comply with it does not make the action of the commission void. *Woodford* v. *Zoning Commission,* 147 Conn. 30, 31, 156 A.2d 470; *DeMars* v. *Zoning Commission,* 142 Conn. 580, 584, 115 A.2d 653; *Nielsen* v. *Board of Appeals on Zoning,* 129 Conn. 285, 287, 27 A.2d 392. Furthermore, the regulations effective August 12, 1958, and March 12, 1959, contained a detailed statement, though in general terms, of their purposes. Under the circumstances, there was a sufficient compliance with the statute. *DeMars* v. *Zoning Commission,* supra, 584. This claim of the plaintiff is without merit.

The plaintiff claims that the amended regula-

tions violated General Statutes § 8-2 in that they were arbitrary and not necessary to protect the public health, safety and convenience and property values. The finding discloses that the commission acted with unusual care and deliberation. The facts developed by it, and found by the court, relating to overcrowding, water supply, sewage disposal, traffic congestion and public convenience fully warrant the commission's action. *Whalen* v. *Town Plan & Zoning Commission,* 146 Conn. 321, 326, 150 A.2d 312; *Gordon* v. *Zoning Board,* 145 Conn. 597, 601, 145 A.2d 746; *DeMars* v. *Zoning Commission,* supra, 583. It may well be, as the plaintiff argues, that the regulations interfere with the complete development of Miami Beach as he had originally planned it. "The maximum possible enrichment of developers is not a controlling purpose of zoning." *Senior* v. *Zoning Commission,* 146 Conn. 531, 535, 153 A.2d 415; *Spalding* v. *Board of Zoning Appeals,* 144 Conn. 719, 721, 137 A.2d 755. Unless there is a clear abuse of discretion by the zoning authority which results in an unwarranted discrimination against the property owner or an unreasonable deprivation of his property rights, the welfare of the public, rather than private gain, is a paramount consideration for the authority. *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294; *Talmadge* v. *Board of Zoning Appeals,* 141 Conn. 639, 645, 109 A.2d 253. The regulations prevent the plaintiff from selling and building on lots of less than 4000 square feet. Old Lyme Zoning Regs. § 3.10.3 (Mar. 12, 1959). But for lots with a larger area than that, the regulations allow latitude for an exception or a variance in a proper case. Id. §§ 3.10.1, 3.10.2, 14. When the plaintiff conveyed lots to his wife and kept others for himself

so that, substantially, neither of them owned lots adjoining each other which could be replanned into lots having larger areas, he himself created the situation of which he now chiefly complains. *Hadik* v. *Zoning Board of Appeals,* 146 Conn. 737, 738, 150 A.2d 606; *Wil-Nor Corporation* v. *Zoning Board of Appeals,* 146 Conn. 27, 31, 147 A.2d 197; *Misuk* v. *Zoning Board of Appeals,* 138 Conn. 477, 481, 86 A.2d 180; *State ex rel. LaVoie* v. *Building Commission,* 135 Conn. 415, 420, 65 A.2d 165. "When the issue whether the zoning legislation does serve the public welfare is fairly debatable, courts cannot place their judgment above that of the legislative body which enacted it." *Clark* v. *Town Council,* 145 Conn. 476, 483, 144 A.2d 327, and cases cited. The plaintiff's claim that the regulations were arbitrary and unnecessary for the protection of the public health, safety and convenience as well as property values cannot prevail.

The plaintiff argues, further, that the regulations do not allow the most appropriate use of the land in Miami Beach. The appropriate use of land is always an important consideration in zoning. *Suffield Heights Corporation* v. *Town Planning Commission,* 144 Conn. 425, 429, 133 A.2d 612; *Del Buono* v. *Board of Zoning Appeals,* 143 Conn. 673, 678, 124 A.2d 915. The regulations do not prevent the plaintiff from using his land in an orderly development of his project. They merely prevent him from doing what he specifically wants to do because there are considerations of health, safety and convenience which are of more consequence than his individual wishes and purposes. Even if diminutive lots would make possible the greatest use which could be made of the plaintiff's land for shore cottages, with possible future year-round use, the com-

mission could reasonably decide, on the ground of lack of adequate water supply and sewage facilities, let alone other dangerous conditions which could result from congested housing, that the plaintiff's proposed use would be inimical to the public welfare.

The plaintiff charges that the changes in the regulations did not accord with any comprehensive plan of zoning in the town. It does not appear that any comprehensive plan had been formally adopted in Old Lyme. The plan, therefore, must be found in the scheme of the zoning regulations themselves. *Couch* v. *Zoning Commission,* 141 Conn. 349, 355, 106 A.2d 173. The instant case is not one where the commission has carved out a relatively small area for special favor or disfavor. The plaintiff concedes that there are other shore-front areas in the town—White Sands Beach, Hawk's Nest Beach, Point O'Woods Beach—where summer cottages have been built on small lots. The regulations apply to all shore-front developments and present, in the general scheme of treatment, a like comprehensive plan for all.

The plaintiff claims that the regulations, particularly § 1.17 as it was amended effective March 12, 1959, are invalid since they prohibit the continuance of a nonconforming use. The matter of nonconforming uses is discussed heretofore in this opinion in connection with the denial of the building permit. Public Acts 1959, No. 661, amended General Statutes § 8-2 by adding a provision to the effect that zoning regulations shall not prohibit the continuance of any existing nonconforming use. It is true that the plaintiff had been developing Miami Beach as a seaside cottage area. Effective January 21, 1957, however, the zoning commission

adopted regulations creating R-10 districts, which require a minimum lot area of 10,000 square feet. Old Lyme Zoning Regs. §§ 3.10, 4.2 (Jan. 21, 1957). Miami Beach was put in an R-10 district at that time. It does not appear that the plaintiff took any appeal from this action by the commission, though he could have done so. General Statutes §§ 8-8—8-10. Until the amendment of § 3.10 of the zoning regulations, effective August 12, 1958, the plaintiff had always obtained, on application, building permits to erect cottages on his lots. Apparently, exceptions were usually granted. That aside, the filing of a map showing lots in a proposed development cannot create a nonconforming use. *State ex rel. LaVoie* v. *Building Commission,* 135 Conn. 415, 419, 65 A.2d 165. If it could, a property owner, by the process of map filing, could completely foreclose a zoning authority from ever taking any action with respect to the land included in the map, regardless of how urgent the need for regulation might be. Public Acts 1959, No. 384 (General Statutes §§ 8-26a, 8-28a) protects developers from changes in area requirements when the subdivision plan has been formally approved by a planning commission. The plaintiff's subdivision plans had never been formally approved; this statute can avail him nothing. The plaintiff's claim that his proposed use of lots of less than the required area is a nonconforming use which cannot be disturbed is not valid. See *Adley* v. *Paier,* 148 Conn. 84, 86, 167 A.2d 449. The trial court did not err in dismissing the plaintiff's appeal in the second case or in refusing to render a declaratory judgment or issue an injunction in the first case.

There is no error in either case.

In this opinion the other judges concurred.