**In the Matter of the ESTATE OF Archibald HAFFERMAN, Deceased.**

**No. 16231.**

Supreme Court of South Dakota.

Considered on Briefs March 23, 1989.

Decided June 14, 1989.

John D. Jacobsen of Willoughby & Benson, Burke, for beneficiary and appellant Kenneth Lawrence Larsen.

Martin Weeks of Bogue, Weeks, Rusch & Billings, Vermillion, for executor and appellee LaRoy Dahlerup.

John P. Blackburn of Blackburn & Stevens, Yankton, for beneficiary and appellee Eldon Isaacson; Daniel L. Fox of Blackburn & Stevens, Yankton, on the brief.

SABERS, Justice.

Kenneth Lawrence Larsen (Larsen) appeals from a final decree of distribution of the estate of Archibald Hafferman (Hafferman).

### Facts

Hafferman died testate on April 12, 1982. Hafferman's will named LaRoy Dahlerup (Executor) as executor. The will directed Executor to employ James Goetz (Goetz) as attorney for the estate. The circuit court granted Executor's petition for probate of the will on July 12, 1982.

Hafferman did not have a surviving wife or children. His will devised the farmstead, appraised at $110,400, to Larsen and a second farm, appraised at $85,631.23, to Eldon Isaacson (Isaacson). The second farm was sold on contract for deed prior to Hafferman's death. The residuary estate, including real and personal property, appraised at $34,020.71, went to St. John's Evangelical Lutheran Church of Yankton, South Dakota (St. John's).

At the time of Hafferman's death, the farm devised to Larsen was cash-rented by two renters. During 1982 and 1983, Executor collected the following rental payments from this property:

$10,285 crop land rent on May 12, 1982;
$875 pasture rent on October 7, 1982;
$10,285 crop land rent on April 1, 1983;
$850 pasture rent on November 2, 1983.

During this time, Executor also collected interest payments under the contract for deed on the real property devised to Isaacson. These rental and interest payments were applied to indebtedness of the estate.[1]

Larsen had difficulty obtaining financing to pay inheritance taxes on the property devised to him. He requested partial distribution to obtain title to the property for loan purposes. Pursuant to Larsen's request, Executor filed a petition for partial distribution, which was granted by the court on January 9, 1984. Larsen took possession of the farm and received all rental payments from that time.

On September 22, 1984, Larsen made a motion for removal of Executor and appointment of himself as administrator. He alleged that Executor neglected his duties by failing to give an annual accounting, by improperly collecting cash rent from the property devised to Larsen, and in recognizing Goetz' creditor claim of $22,354.50 against the estate. Goetz' claim was for legal services rendered Hafferman during his life. The court denied Larsen's petition as premature.

On January 30, 1985, Executor filed a final account and petition for distribution. Larsen filed another motion for removal of executor and objected to the payment of Goetz' claim. Goetz withdrew as counsel for the estate because of the potential conflict. At the hearing, Goetz testified that a major portion of his claim against the estate was based on an unwritten contingent fee arrangement with Hafferman for extensive litigation in settling the estate of Hafferman's wife. Executor testified to personal knowledge of the legal services that Goetz provided Hafferman.

On November 22, 1985, the trial court entered an order appointing Attorney Michael Braley (Braley) to represent Executor and conduct an independent investigation into Goetz' claim. On October 28, 1986, Braley advised the court that in his opinion Goetz did not present sufficient evidence of his claim and Executor should not have

---

1. Later, Executor agreed that the estate should not have collected the November 1983 pasture rent in the amount of $850 and paid it to Larsen.

paid it. Based on Braley's report, the court entered an order denying payment of Goetz' claim and directed Executor to recover the payment. The court also ordered Executor to pay to Larsen the 1982 and 1983 farm rental payments Executor collected to pay estate indebtedness. Both Executor and Goetz filed motions for new trial. Although the court denied the motions, it modified its previous order to permit Executor to retain the rental payments.

On September 11, 1987, Executor filed an amended final account and petition for distribution. Larsen objected to the petition. Larsen also filed a petition for attorney fees in the amount of $10,560.39, plus tax and costs. On March 21, 1988, the court entered a decree approving the amended final account and distribution of estate assets. The court denied Larsen's objections and request for attorney fees, but granted Executor's request for attorney fees in the amount of $7,950. Larsen appeals.[2] We affirm and remand in part.

### 1. *Collection of cash rent to pay estate debts.*

Larsen objects to Executor's use of the 1982 and 1983 cash rent from the property devised to him to pay estate debts. He claims that an executor may retain such rents only when it is necessary because there are no other available assets in the estate to pay estate debts.

■ The title to real property devised in a decedent's will is immediately vested in the devisees, but is subject to the possession and control of the executor and circuit court during administration. *In re Estate of Lingscheit*, 387 N.W.2d 738 (S.D.1986);

*In re Estate of Kappenmann*, 82 S.D. 91, 141 N.W.2d 780 (1966). During administration, the devisees are entitled to the rent, income, and profits which accrue after the decedent's death, but such income may be used to pay debts and administration expenses. SDCL 30-23-3; *Lingscheit, supra.*

SDCL 30-23-3 provides:

Unless it satisfactorily appears to the circuit court that the rents, issues, and profits of the real property for a longer period are necessary to be received by the executor or administrator wherewith to pay the debts of the decedent, or that it will probably be necessary to sell the real property for the payment of such debts, at the end of ten months from the first publication of the notice to creditors, the court must direct the executor or administrator to deliver possession of all the real property to the heirs at law or devisees.

SDCL 30-23-3 grants an executor a right to income from real property to pay estate debts for ten months following the first publication of notice to creditors. Larsen interprets the statute to require an executor to show that there are no other assets available before using the income to pay the debts of the estate. Contrary to Larsen's interpretation, the language of the statute indicates that the executor need not show the necessity to use the income to pay estate debts until ten months after the first publication of notice to creditors.

■ Larsen also claims that Executor failed to follow SDCL 29-2-14 and SDCL 29-6-7 in paying the estate debts.[3] Larsen

2. Isaacson submits a brief, as an appellee, supporting the arguments of Executor. However, he protects his position by conditionally stating that he would be entitled to the interest payments Executor collected on his contract for deed in the event we reverse the court in Larsen's favor.

3. SDCL 29-2-14 provides:
All property disposed of by will, real and personal, *without distinction between them, is* chargeable with the payment of testator's debts, except as otherwise expressly provided in this code, to be resorted to in the order specified in § 29-6-7.
SDCL 29-6-7 provides:

The property of a testator, except as otherwise specially provided in this code, must be resorted to for the payment of debts in the following order:
 (1) The property which is expressly appropriated by the will for the payment of the debts;
 (2) Property not disposed of by the will;
 (3) Property which is devised or bequeathed to a residuary legatee;
 (4) Property which is not specifically devised or bequeathed; and
 (5) All other property ratably.
Before any debts are paid, the expenses of the administration and the allowance to the family must be paid or provided for.

argues that these statutes provide the executor direction as to the order of property to be used for payment of estate debts. He argues that under SDCL 29–6–7 the residuary property devised to St. John's must be used prior to property specifically devised. In relying on SDCL 29–2–14 and SDCL 29–6–7, Larsen confuses the use of the devised property itself, with the income from the devised property. SDCL 30–23–3 refers only to the income from the property. SDCL 29–2–14 and SDCL 29–6–7 both contain provisions which limit their application to more specific code provisions dealing with payment of estate debts. SDCL 30–23–3 is one such specific provision which grants the executor the power to use the income from real property for ten months after publication of notice to creditors.

Larsen claims that even if Executor had an absolute right to use the income to pay estate debts for ten months, the 1983 rental payment of $10,285 was not due within the ten months following the publication of notice to creditors. The first publication of notice to creditors was made on June 25, 1982. The 1982 rental payment became due April 1, 1982, and was paid May 12, 1982. The 1982 pasture rent became due and was paid October 7, 1982. The 1983 rental payment became due April 1, 1983, and was paid the same date. These payments all became due and were paid within ten months following the first publication of notice. Executor properly applied the rental payments to estate debts.

### 2. *Beneficiaries' attorney fees.*

■ Larsen claims that the trial court erred in denying his motion for attorney fees. He argues that his actions benefitted the estate and were essential in protecting the interests of the estate because of Executor's attempt to substantiate Goetz' claim. Larsen makes a motion for appellate attorney fees in the amount of $2,000. Isaacson also makes a motion for appellate attorney fees, in the amount of $592.

*In re Engebretson's Estate (Engebretson I),* 68 S.D. 255, 1 N.W.2d 351 (1941), held that the allowance of attorney fees to a beneficiary must satisfy a two-prong test:

... [I]n which the services performed have not only been distinctly beneficial to the estate, but became necessary either by reason of laches, negligence, or fraud of the legal representative of the estate.

*Id.,* 1 N.W.2d at 353 (*quoting Becht v. Miller,* 279 Mich. 629, 273 N.W. 294, 298 (1937)). *In re Engebretson's Estate (Engebretson III),* 69 S.D. 549, 12 N.W.2d 761 (1944) applied the test from *Engebretson I* and held that the beneficiary should be allowed attorney fees because his actions had been beneficial to the estate and were necessary because of fraud by the legal representative of the estate. *In re Estate of Bamberger,* 79 S.D. 85, 108 N.W.2d 50 (1961) reaffirmed the two-prong test set out in *Engebretson I* and *Engebretson III.* *Bamberger* added that the second prong of the test could be satisfied by showing that the beneficiary's actions were necessary because the executor failed to adequately defend the interests of the estate:

Although we do not question the good faith of the bank, we are of the view that by mistakenly assuming a neutral attitude, because of its depositary relation, it deprived the estate of the vigorous representation contemplated by the law, and thrust the burden of protecting its interests upon counsel for David. This activity gave rise to the circumstances which would support an allowance for fees and expenses[.]

*Bamberger, supra,* 108 N.W.2d at 53.

The trial court found that Larsen satisfied the first prong of the test as he benefitted the estate by compelling the return of the payment to Goetz. While this action benefitted the estate, a great deal of the litigation in this case involved Larsen's attempt to improperly recover the 1982 and 1983 rental payments which Executor applied to the estate's debts. This action was solely for Larsen's benefit, not for the benefit of the estate. In fact, this action harmed the estate by causing unnecessary litigation and delay of the final distribution of assets to the other beneficiaries. Thus, only a small portion of Larsen's attorney fees benefitted the estate.

The trial court found that the second prong of the test was not satisfied as Executor paid Goetz' claim in good faith. This was based in part on the Executor's personal knowledge of the services performed by Goetz. Further, the court found no negligence or other wrongdoing by Executor. The record supports these findings. *See also* discussion under 3. *Executor's attorney fees, infra.*

For the above reasons, we uphold the trial court's denial of Larsen's attorney fees and deny his motion for attorney fees on appeal. We also deny Isaacson's motion for attorney fees on appeal.

### 3. *Executor's attorney fees.*

Larsen claims that Executor is not entitled to any attorney fees following Goetz' withdrawal as attorney for Executor. He argues that Executor's actions following Goetz' withdrawal were primarily aimed at proving the validity of Goetz' claim to protect himself, and not for the benefit or interests of the estate.

■ In *Engebretson I,* this court stated that an executor or administrator is entitled to:

> [A]ttorneys' fees necessarily incurred in the administration of his trust *or* in litigation for the benefit of the estate of his decedent, conducted in good faith and with reasonable care and prudence. (emphasis added).

*Id.,* 1 N.W.2d at 353. *In re Engebretson's Estate (Engebretson II),* 68 S.D. 572, 577, 5 N.W.2d 57, 59 (1942), clarified the rule for reimbursement of an executor for attorney fees:

> This rule is stated in the alternative, and should be understood as meaning that if the fees for services of an attorney employed by the administrator are necessarily incurred in the administration of the trust, that this is sufficient to authorize their allowance without a showing of benefit to the estate.

Under *Engebretson I* and *Engebretson II,* the administrator must show that the attorney fees were necessarily incurred in the administration of the estate *or* for the benefit of the estate, and that it was done in good faith and without negligence.

■ Based on Braley's report, the court found that Executor should not have paid Goetz' claim, as it was not proven by clear and convincing evidence. Following the ruling, Executor made a motion for a new trial. Larsen argues that by taking such action Executor was acting in his own behalf, rather than on behalf of the estate. A review of the motion for new trial reveals that Executor did not contest the court's ruling that Executor should not have paid Goetz' claim. Rather, Executor contested the court's ruling that Larsen was entitled to the 1982 and 1983 rental payments. Based on Executor's motion, the court amended its order and held that Executor was entitled to the 1982 and 1983 rental payments to pay estate debts.

The trial court found that Executor acted in good faith and without negligence. The court also found that the attorney fees on behalf of Executor were fair and reasonable, and necessary for the administration of the estate. Based on these findings and the rule in *Engebretson I* and *Engebretson II,* the court granted Executor's attorney fees. The record supports the court's findings and we affirm the award of attorney fees to Executor.

Executor also makes a motion for attorney fees on appeal in the amount of $6,500, plus $390 tax and $271.88 expenses. A breakdown of the motion shows that approximately sixty-three hours or $3,020.25 of the $6,500 are for legal proceedings before the trial court. The remaining $3,479.75 are attorney fees for this appeal. We approve payment by the estate of attorney fees, tax, and costs for the appeal, but remand to the trial court to consider the attorney fees, tax, and costs incurred in the trial court.

### 4. *Interest on the claim erroneously paid Goetz.*

Executor paid Goetz' claim of $22,354.50 on November 27, 1984. Due to Larsen's objection, Goetz placed the payment into a non-interest bearing escrow account, subject to the court's decision. The payment to Goetz was not returned to the estate until after the court's order of June 1, 1987, which order required Executor to re-

cover the payment, plus fifteen percent interest from the time of payment. The court amended its order and held that the Executor was not legally bound to collect interest on the payment made to Goetz. Larsen claims that the court erred by not requiring Executor to pay interest to the estate.

Larsen cites no authority to support his claim, other than the general fiduciary obligation of an executor to manage an estate in the same manner as his own affairs. An executor satisfies this obligation if he acts in good faith and with reasonable care. 31 Am.Jur.2d *Executors and Administrators* § 217 (1967). The court found that Executor made the payment in good faith and without negligence. These findings are supported by the evidence. By making the payment, Executor put the funds out of his own hands and control. Under these circumstances, Executor did not breach his fiduciary obligation to the estate and the court did not err in ruling that Executor was not required to account for interest on the payment.

Affirmed and remanded in part.

All the Justices concur.