In the Matter of the GUARDIANSHIP
of the Person and ESTATE OF
Jennie JACOBSEN.

Nos. 17112, 17113.

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 1991.

Reassigned Sept. 25, 1991.

Decided March 11, 1992.

Michael J. McGill, Beresford, for appellant First Dakota Nat. Bank of Yankton, S.D.

C.E. Light, Yankton, for appellant Harlan Jacobsen.

Linda Kogel-Hasse, Vermillion, for appellee Virginia Solberg.

HENDERSON, Justice (on reassignment).

## PROCEDURAL HISTORY/ISSUES

Harlan Jacobsen (Harlan) commenced this proceeding by filing a Petition for Guardianship over the Person and Estate of Jennie Jacobsen on July 24, 1989.

Virginia Solberg (Virginia) also filed a Petition for Appointment of Guardianship on November 7, 1989, asking the court to appoint her and an independent third party as co-guardians of the person and estate of Jennie Jacobsen.

On December 4, 1989, Harlan moved to amend his Petition, requesting that the

court appoint Harlan and an independent third party as co-guardians of the person and estate of Jennie Jacobsen. A trial was subsequently held concerning this matter. Motions were then filed by Virginia and Harlan for attorney's fees and a hearing was held on February 6, 1990.

On February 13, 1990, the trial court entered its Findings of Fact and Conclusions of Law. Virginia was designated Guardian of the person and First Dakota National Bank of Yankton, South Dakota (Bank) was designated Guardian of the Estate of Jacobsen. Both Harlan and Virginia were denied attorney's fees on April 4, 1990. On appeal, Harlan presents two issues:

(1) Was the appointment of Virginia as guardian of the person, and Bank as guardian of the estate of Jennie Jacobsen, an abuse of the trial court's discretion?

(2) Should Harlan have been awarded reimbursement of attorney's fees and expenses from the Jennie Jacobsen estate?

Bank also appeals the appointment of Virginia as Guardian over the Person of Jennie Jacobsen. Appeal No. 17112.

We affirm in part, reverse in part and remand.

## FACTS

Jennie Jacobsen (Jennie) was born on August 30, 1896. She is legally blind and suffers from arthritis. Jennie also suffers from cerebral arteriosclerosis, making her forgetful and confused.

Jennie was married to Alfred Jacobsen (Alfred) who died on January 5, 1978. They had three children; Virginia, Harlan and Marlow Jacobsen. At the time of her husband's death, Jennie was living on the family farm in Yankton County. During this time, the entire family agreed that it would be in Jennie's best interests for a family member to move in with her. Kevin Solberg, Virginia's son, assumed this duty from 1979 to 1981, when he left to start college. At that time, in 1981, Jennie moved in with Virginia and her husband. She has lived there ever since.

Due to her declining health, it became increasingly difficult for Jennie to carry on her daily affairs. Therefore, in 1979, while still mentally alert, Jennie executed a Power of Attorney naming Virginia her Attorney in Fact. Virginia understood that her only responsibility as Attorney in Fact was to assist her mother, not to manage her assets.

The trial court determined that the best interests of Jennie would be served by appointing Virginia as guardian. The trial court based this decision on the fact that Jennie had been living with Virginia and her husband for the past ten years and maintains a loving relationship with them. This helped the trial court to determine that Virginia and her husband provide Jennie with constant supervision and a comfortable environment. On the other hand, the trial court found that Harlan has shown no interest in his mother or the management of her affairs prior to 1989. Further, the trial court made no findings as to waste or mismanagement of estate assets.

However, the record belies this decision by the trial court. A review of the record clearly reveals Virginia's admitted financial indiscretions and improper self-dealing. The following are but a few examples:

(1) Using Jennie's money, she made an unsecured, unmemorialized $23,000 loan to her son Kevin for the purchase of a tractor, knowing Kevin was insolvent and jailed for writing bad checks.

(2) Virginia and her husband, Ray, for many years leased Jennie's property for $6,000 per year but never paid any money to Jennie. When asked why no payments were made, Virginia said "We are keeping that as an insurance policy that we get paid for taking care of her." ... "We just knock off $6,000 off whatever she owes us for staying with us." When asked what Jennie owes them for staying with them, Virginia said "We haven't decided that yet."

(3) Virginia took $10,000 out of her mother's bank accounts in 1986 and 1987 to "partially reimburse" them for her care. This was done at the same time she was

withholding the cash lease payments referred to in (2), *supra.*

(4) In 1978, Virginia borrowed $24,000 from Jennie, without a note or collateral, to enable her and her husband to purchase forty acres of farmland. Those funds apparently have not been repaid.

(5) Virginia failed to explain how nine years' of social security income to Jennie did not accumulate into any type of savings, especially considering that the living expenses were minimal.

(6) Virginia failed to account for farm expenses paid from Jennie's bank accounts on Yankton County farming operations.

(7) Virginia permitted her son Kevin to use Jennie's machinery without compensation. She permitted Kevin to live on the Yankton County farm property rent free and, at the same time, actually paid Kevin's utility bills with Jennie's money.

(8) While knowing that her son Kevin did not have good farming skills or abilities or any capital of his own, Virginia "leased" (apparently on a share-crop basis) Jennie's property to Kevin in preference to another farmer who had such skills and capital.

(9) Despite his horrendous farming practices, Virginia continued to "lease" the Yankton County property to Kevin.

(10) Virginia failed to demand rent and to market crops and thus permitted a bank to levy on Jennie's crops. Additionally, she failed to take legal action to pursue Jennie's share of government program payments and crops that the bank arguably converted.

(11) Virginia used Jennie's money for the purchase of machinery by her husband Ray and son Kevin. One piece of equipment, a combine, was destroyed by fire and no insurance had been purchased for it.

(12) Virginia failed to make a reasonable accounting of Jennie's monies since she has become incompetent.

(13) Virginia executed forms with the ASCS office by which her mother relinquished any claim to government program payments and permitted them to be paid to her husband Ray, even though there had been no payment of rent to Jennie for the eight prior years. The government program payments that Ray received on the land exceeded $5,500.

## DECISION

I. *We hold that the evidence establishes that the trial court clearly abused its discretion in appointing Virginia Solberg as guardian of the person. However, the appointment of the Bank as guardian of the estate of Jacobsen was not an abuse of the trial court's discretion.*

 Subject to statutory restrictions, the selection of the person to be appointed guardian is a matter which is committed largely to the discretion of the appointing court.[1] 30 Am.Jur.2d, *Guardian and Ward,* § 27 page 29 (1968). Therefore, the standard of review on appeal for this case is: Did the trial court abuse its discretion in appointing Virginia guardian over the person of Jennie or by appointing the Bank guardian over the estate of Jennie? The term "abuse of discretion" refers to a discretion exercised to an end or purpose not justified by and clearly against reason and evidence. *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981). Only a "clear" abuse of discretion warrants reversal. *Rykhus v. Rykhus,* 319 N.W.2d 167 (S.D. 1982). We find that, considering the totality of the circumstances, the trial court clearly abused its discretion.

 Harlan asserts the trial court abused its discretion by appointing Virginia as the guardian of their mother. The thrust of his argument is that Virginia has mishandled Jennie's assets over the past

---

**1.** SDCL 30–27–6 states:
 The circuit court, when it appears necessary or convenient, may appoint a guardian of the person and estate, or either, of a minor or of a person who is mentally ill or for any cause mentally or physically incompetent to manage his own property, such person being hereafter in this title referred to as an incompetent. The court, in appointing a guardian, is to be guided by the consideration set forth in § 30–27–19 to 30–27–25, inclusive.
 *See also, In Re Knott's Guardianship,* 71 S.D. 53, 21 N.W.2d 59 (1945).

five years in her capacity as Attorney in Fact, exemplified by what we have outlined above. He believes this behavior is grounds for reversal. However, the trial court failed to make findings relating to Harlan's theory, stating it "makes no finding as to waste or mismanagement of estate assets." Essentially, Harlan is asking this Court to find the facts in this case. Ordinarily, the request for review would not properly be before this Court. Findings on waste or mismanagement of the estate are necessary to permit meaningful appellate review.

■ Generally, no question is presented for appellate review by the refusal of the trial court to find incidental or evidentiary facts. However, this Court can review where the trial court has failed to find ultimate facts as to evidence which is uncontroverted and the inferences are all only one way. *Corsino v. Grover*, 148 Conn. 299, 170 A.2d 267 (1961); *Post v. Hartford St. R. Co.*, 72 Conn. 362, 44 A. 547 (1899); *Coonrod & Walz Const. Co., Inc. v. Motel Enterprises, Inc.*, 217 Kan. 63, 535 P.2d 971 (1975); *Bedlow v. New York Floating Dry–Dock Co.*, 112 N.Y. 263, 19 N.E. 800 (1889), 2 L.R.A. 629; *State v. Mullin*, 66 Wash.2d 255, 401 P.2d 991 (1965); 5A C.J.S. Appeal & Error § 1675 (1958). This case is proper for such review due to the overwhelming and uncontroverted evidence present in the record. Review of the record evidence clearly indicates that Virginia Solberg has consistently misappropriated money and property of the ward, Jennie Jacobsen. This evidence militates against an appointment of Virginia Solberg as Guardian of the Person of Jennie Jacobsen.

Considering the totality of the circumstances, the trial court abused its discretion and should have appointed a non-family member as guardian of the person as well as the estate of Jennie. *See, generally*, regarding abuse of discretion, *Gross v. Gross*, 355 N.W.2d 4 (S.D.1984); *Rykhus v.*

*Rykhus*, 319 N.W.2d 167, 170 (S.D.1982); *Herndon*, 305 N.W.2d at 917; *Davis v. Kressly*, 78 S.D. 637, 107 N.W.2d 5 (1961); *Root v. Bingham*, 26 S.D. 118, 120, 128 N.W. 132, 133 (1910); *see also, Myron v. Coil*, 82 S.D. 180, 143 N.W.2d 738 (1966); *Slagle & Co. v. Bushnell*, 70 S.D. 250, 16 N.W.2d 914 (1944). This will restrict family animosity. We reverse the decision of the trial court appointing Virginia Guardian of the Person of Jennie.

■ Harlan also argues briefly that the appointment of the Bank as guardian of the estate of Jennie Jacobsen was an abuse of discretion. We disagree. We believe that appointing a financial institution to professionally manage a rather wealthy estate is not clearly against reason and evidence. There is no evidence in the record to show that the Bank was incompetent to act as guardian of her estate. The Bank would be, and should be, an impartial, independent thinking entity. Therefore, we hold that the trial court did not abuse its discretion in appointing the Bank as guardian over the estate of Jennie.

II. *The trial court properly denied Harlan reimbursement of attorney's fees and expenses from the Jennie Jacobsen estate.*

■ Under South Dakota law, attorney's fees are allowed in actions only when specifically provided by statute according to SDCL 15–17–7 which reads:

> The court may allow attorneys' fees as costs for or against any party to an action only in the cases if it is specifically provided by statute....

We are unable to find any precise authority allowing attorney's fees to petitioners in guardianship proceedings. However, attorney's fees in guardianship proceedings may be authorized pursuant to SDCL 30–26–3 [2] vis-a-vis SDCL 30–25–6.[3] Under SDCL 30–25–6, fees are awarded as a necessary expense for the care and management of the

---

**2.** SDCL 30–26–3 states: The provisions of this title relative to the estates of decedents, so far as they relate to the practice in the circuit court, apply to proceedings under chapters 30–26 to 30–31, inclusive.

**3.** SDCL 30–25–6 states, in pertinent part: The executor or administrator shall be allowed all necessary expenses in the care, management, and settlement of the estate and for his services such fees as are provided in this chapter ...

638

estate. However, before an award will be made, a two-prong test must be met: (1) the services rendered must be beneficial to the estate, and (2) the services were necessary because of laches, negligence, fraud or failure to defend an interest of the estate, by the personal representative of the estate. *Matter of Hadleigh D. Hyde Trust*, 458 N.W.2d 802 (S.D.1990); *Matter of Estate of Hafferman*, 442 N.W.2d 238 (S.D.1989).

At this time, we are unable to award attorney's fees to Harlan because he did not undertake the care and management of the estate. Absent this criteria, we are of the opinion that the trial court properly denied Harlan's request.

*Appeal No. 17112*

By separate appeal, the Bank also challenges the appointment of Virginia as the guardian over the person of Jennie. It argues that the trial court abused its discretion in refusing to appoint an independent, non-family member as guardian. The Bank believes, and vigorously asserts, that Virginia has committed serious breaches of her fiduciary duty in past management over Jennie's estate. This includes allegations of mismanagement and misappropriation of Jennie's money. It also believes that Virginia's appointment will create hostility within the family.

Due to our determination on the merits, heretofore under paragraph one of our decision, Bank's appeal is, essentially, mooted.

Affirmed in part, reversed in part and remanded for purposes of proper appointment of a Guardian of the Person of Jennie Jacobsen.

MILLER, C.J., and HERTZ, Acting J., concur.

SABERS, J., concurs specially.

WUEST, J., concurs in part and dissents in part.

AMUNDSON, J., not having been a member of the Court at the time this case was considered, did not participate.

SABERS, Justice (concurring specially).

I agree that it was an abuse of discretion on the part of the trial court to fail to appoint a neutral and objective non-family member as guardian of the person of Jennie Jacobsen. The new guardian of the person can decide, subject to the trial court's approval, if it really is in Jennie's best interest to live with Virginia and her family. As stated in my dissent in *Dacy v. Gors*, 471 N.W.2d 576, 582 (S.D.1991), "one cannot mask [an] abuse of discretion by failing to make the obvious findings and legal conclusions."

WUEST, Justice (concurring in part and dissenting in part).

I agree with the majority opinion the court did not abuse its discretion in appointing the bank as guardian over the estate of Jennie.

I would affirm the trial court on the appointment of Virginia as guardian of the person of Jennie. It must be taken into account the trial court actually viewed the witnesses and judged their credibility. The standard of review is whether the trial court abused its discretion in appointing Virginia as guardian of the person.

The term "abuse of discretion" refers to a discretion exercised to an end or purpose not justified by and clearly against reason and evidence. *Herndon v. Herndon*, 305 N.W.2d 917 (S.D.1981). Only a "clear" abuse of discretion warrants reversal. *Rykhus v. Rykhus*, 319 N.W.2d 167 (S.D. 1982).

SDCL 30–27–6 states:

The circuit court, when it appears necessary or convenient, may appoint a guardian of the person and estate, or either, of a minor or of a person who is mentally ill or for any cause mentally or physically incompetent to manage his own property, such person being hereafter in this title referred to as an incompetent. The court, in appointing a guardian, is to be guided by the consideration set forth in § 30–27–19 to 30–27–25, inclusive.

*See also, In Re Knott's Guardianship*, 71 S.D. 53, 21 N.W.2d 59 (1945).

The trial court determined that the best interests of Jennie would be served by appointing Virginia as guardian. Jennie had been living with Virginia and her husband for the past ten years and maintains a loving relationship with them. Virginia and her husband provided Jennie with constant supervision and a comfortable environment. Dr. T.H. Sattler, the Jacobsen family physician of forty years, reported to the court on November 18, 1989:

> The daughter, Virginia Solberg, and her husband appear to meet her every need, and staying with the family has been a blessing and what is always advisable under a comfortable and pleasant circumstance for elderly or any individual who requires supervision and care.

The trial court, in its discretion, appointed a family member, who had developed a close relationship with her mother over a period of sixty-nine years. It was Virginia who cared for her on a day-to-day basis. There was a strong bond between Virginia and her mother. Rather than placing Jennie in the impersonal environment of a nursing home, the trial court decided that it would be far better to have Jennie continue to live with her daughter. Harlan argues that Virginia has mishandled her mother's assets over the past five years in her capacity as attorney in fact. The trial court specifically stated that it "makes no finding as to waste or mismanagement of estate assets."

The majority opinion proceeds to enter findings of fact claiming financial misconduct on Virginia's part. In my opinion, these alleged discrepancies are not relevant to appointment of Virginia as guardian of the person. A guardian of the property and a guardian of the person have different duties and powers. 39 C.J.S. Guardian and Ward § 5, at 15 (1976). Generally, the guardian of the person may spend income from the ward's estate only for necessary expenses of support and maintenance. *Id.* § 62. Normally, the guardian may not expend the principal of the estate without court approval. *Id.* §§ 62–63.

In contrast, the guardian of the property has general authority over his ward's property as a fiduciary or trustee. *Id.* § 69. This power includes the right to possess and control the ward's real and personal property. *Id.* § 72. Thus, guardians of the estate have much more control over the ward's assets. Virginia's alleged mismanagement is not relevant to her limited role as guardian of the person.

I agree with the majority that attorney's fees may be awarded in guardianship proceedings pursuant to SDCL 30–26–3 and SDCL 30–25–6. However, I disagree with the application of the two-prong test in this case. The majority cites two cases: *Matter of Hadleigh D. Hyde Trust,* 458 N.W.2d 802 (S.D.1990); and *Matter of Estate of Hafferman,* 442 N.W.2d 238 (S.D. 1989), both authored by Justice Sabers for the proposition that (1) the services rendered must be beneficial to the estate; and (2) the services were necessary because of laches, negligence, fraud or failure to defend an interest of the estate by the personal representative of the estate. That is the rule for the beneficiary of an estate. However, as to an executor, the rule is different. In *Hafferman,* we quoted *Engebretson I,* which stated that an executor or administrator is entitled to:

> [A]ttorneys' fees necessarily incurred in the administration of his trust *or* in litigation for the benefit of the estate of his decedent, conducted in good faith and with reasonable care and prudence. (Emphasis added.)

*Hafferman,* 442 N.W.2d at 242 (quoting *In re Engebretson's Estate (Engebretson I )*, 68 S.D. 255, 259, 1 N.W.2d 351, 353 (1941)). We then noted that *In re Engebretson's Estate (Engebretson II )*, 68 S.D. 572, 5 N.W.2d 57 (1942), clarified the rule for reimbursement of an executor for attorney fees:

> This rule is stated in the alternative, and should be understood as meaning that if the fees for service of an attorney employed by the administrator are necessarily incurred in the administration of the trust, that this is sufficient to authorize their allowance without a showing of benefit to the estate.

*Hafferman,* 442 N.W.2d at 242 (quoting *Engebretson II,* 68 S.D. at 577, 5 N.W.2d at 59). Thus, we stated, "under *Engebretson I* and *Engebretson II,* the administrator must show that the attorney fees were necessarily incurred in the administration of the estate *or* for the benefit of the estate, and that it was done in good faith and without negligence." Id. Although this rule is not on all fours as to the facts in this case, I would rely upon it to grant both Virginia and Harlan some attorney's fees. Both parties were acting in good faith and benefitted the estate by bringing the guardianship proceedings and by getting the issues resolved.

I am concerned that a denial of attorney's fees will set a precedent chilling the commencement of guardianship proceedings in future cases. The Court may control abuses by obstructious litigants or needless litigation by denying fees or limiting them. I would remand to the trial court to grant both Virginia and Harlan a reasonable sum for attorney's fees.