MEMORANDUM OF DECISION
This is an action for the termination of the parental rights of Iris P. and Alfred R., Sr., the unmarried, biological parents of three minor children. The children are Maryia R., born on July 14, 1992; Alfred R., Jr., born on June 18, 1993; and Michael P., born on June 11, 1994. The court finds that service has been made in accordance with the Practice Book, counsel have been appointed for both the respondent mother (mother) and respondent father (father), and a guardian ad litem has been appointed for the father. The mother did not appear in court for any of the trial days. The father did appear each day with his counsel and CT Page 4209 guardian ad litem.
The court finds that there is no action pending in any other court affecting the custody of these children. The court further finds that reasonable efforts were made to prevent the removal of these children from the home of the parents and, subsequent to their removal, reasonable efforts have been made to reunify the family.
The court, having carefully considered the verified petition, the social study, the psychological evaluation and other documents admitted into evidence, together with the testimony of the various witnesses, makes the following findings.
The summary of facts which was attached to the petition contains seventy four (74) allegations regarding the care and treatment of these children and the services that were offered to the parents in an attempt to obtain reunification. The social study, Petitioner's Exhibit # 13, is a most comprehensive and thorough sixty two (62) page presentation of the facts, the services offered, and the degree of compliance by the mother and the father. The court places great credence upon the factual recitations contained in that social study. Indeed, the mother did not appear and her attorney was, predictably, unable to controvert any of the findings and representations made in the social study. While the father did appear through counsel and with a guardian ad litem, the focus of their disagreements are not principally with the factual recitations contained in the social study, but rather with the issue of reasonable efforts made to obtain reunification and the degree to which the services offered complied with the Americans With Disabilities Act (the ADA), 42 U.S.C. § 12132 (1).[2]
The mother does not take issue with the recitation of the facts by the DCF contained in the social study. She admits in her brief that "visitation has not been satisfactory, nor does the evidence indicate that mother has rehabilitated herself. Further, the evidence indicates that the Department has offered her a wide range of services." Instead, the mother's argument relates to the "sequential way in which services were offered." The mother claims that DCF should not have offered her all of the services one service at a time, but rather all at the same time. However, the mother provides no social services authority or legal authority for that proposition. The court finds that the services offered to her were "adequate, available, accessible and CT Page 4210 relevant.[3]
 REUNIFICATION EFFORTS
The father claims that reasonable efforts were not made to reunify him with his children.
It is undisputed that on or about June 14, 1994 a petition of alleged neglect was filed by DCF in the Superior Court for Juvenile Matters in Waterbury. The petition alleged that the children were being denied the proper physical, educational, emotional and moral care and attention, and were being permitted to live under conditions, circumstances or associations injurious to their well-being. Specifically, the petition alleged that the mother was medically and physically neglecting the children; that the children had inadequate food; that there was no prenatal care for the infant Michael P.; that mother was seemingly indifferent to being evicted from her apartment when she went to the hospital to give birth to the infant Michael P.; that both mother and the child tested positive for cocaine on June 11, 1994; and that there was minimum bonding between the mother and child. The allegations further indicated that mother had very limited parenting skills and appeared to be very intellectually limited. With respect to the father, the petition alleged that he had not been involved in the primary care of the children since October 1993 and had no recent contact with the mother or the children. Based upon the allegations contained in the petition, an adjudication of neglect was made as to the children on July 8, 1994.
From the social study and testimony in court it is also clear that the case worker first contacted the father when he was incarcerated at the New Haven Correctional Facility on June 30, 1994. On the same date the social worker contacted the Waterbury City Welfare Department and found that the father received financial and medical assistance. Also on that same date, a check with the Superior Court in Waterbury revealed that the father provided his address.
When the case was first instituted, the mother indicated that she believed that the father resided at. Service was attempted at that address. The affidavit regarding diligent search for the father, filed by the DCF social worker on June 27, 1994, indicated that the social worker made attempts to locate him through city welfare, state welfare, the Dept. of Corrections, CT Page 4211 St. Mary's Hospital, Waterbury Hospital and the child support office. In addition, the case worker consulted the Waterbury phone directory. In addition to making diligent inquiry, the court ordered publication in the Waterbury Republican American to provide notice to the father. DCF also had other addresses for the father, including the Osborne Correctional Center in Somers, and 62 Ives Street, Waterbury.
The father was familiar with the DCF and their foster care program. Indeed, on June 21, 1993, the parents both signed a voluntary placement agreement with DCF. There is no indication in the file showing that the father attempted to contact the DCF to find his missing children. There was no claim by the father that he contacted the mother's relatives, by phone or by visit, to even inquire about his children. Neither did his mother, the children's paternal grandmother, make any efforts to locate the children, whose location was known to DCF at all times.
The file indicates that the mother left the father in October, 1993 because of domestic violence. The social study indicates that on January 10, 1994, the father had pulled a knife on the mother, beat her up, and his sister Jackie intervened to stop him. The father threatened to kill the mother if she called the police. Again on March 7, 1994, the mother complained to the social worker that the father still hits her. The record further supports a finding that the father, who represents himself in his memorandum of law as an "interested and active parent," did not see his children from late 1993 or early 1994 until a visit was arranged by DCF in September of 1995 and, then, he only saw the children on two occasions. There is no support in the record for the father's claim that the mother had moved to Puerto Rico with the children. The court finds that the father did not exercise any reasonable efforts to locate his children in nearly two years. During that same two year period the court finds that DCF made reasonable efforts to find the father and, indeed, did find the father in June, 1995 and, thereafter, made arrangements for visitation.
"A parent must maintain a reasonable degree of interest in the welfare of his or her child. `Maintain' implies a continuing, reasonable degree of concern." (Internal quotation marks omitted.) In re Michael M., 29 Conn. App. 112, 614 A.2d 832
(1992); In re Rayna M., 13 Conn. App. 23, 37-38, 534 A.2d 897
(1987); In re Migdalia M., 6 Conn. App. 194, 208-209,504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986); In reCT Page 4212Kezia M., 33 Conn. App. 12, 18, 632 A.2d 1122 (1993). Where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred. In re Juvenile appeal (Docket No.9489), 183 Conn. 11, 438 A.2d 801 (1981); In re Migdalia M.,
supra, 6 Conn. App. 209.
Given the father's long-standing lack of interest and concern for his children and his failure to maintain any contact with them, this court finds that DCF was under no duty to make heroic efforts to reunify the father with his children.
REHABILITATIVE PROGNOSIS
After a two year absence in the lives of his very young children, that there was no parent-child relationship evident with the father when he first visited his children in September, 1995. On October 6, 1995, the social worker contacted the Connecticut Counseling Center to arrange for a substance abuse evaluation of the father to determine his need for such service. The father confirmed that he would attend the appointment, but he failed to do so. The father admitted to Dr. Mantell during his psychological evaluation on November 25, 1996 that the DCF social worker was "always sending letters about his children."
After evaluation, Dr. David Mantell concluded that the father "is a neurologically involved 27 year old unmarried father of three out of wedlock children. He is handicapped by a chronic and uncontrolled seizure disorder that prevents him from working and requires that he receive care from others. He functions in the low borderline range intellectually and has a first to third grade reading, spelling and mathematical ability. He failed his mental status examination. He is in a dependent condition on account of his disability. Judgment capacity is weak. I am not aware of any interventions that might improve his functional capacity. [The father] is completely out of touch with his children who do not recognize him. There is no evidence of a father and children relationship. . . . I judged the father to be unable to care for the children or to generate a parent-child relationship . . . considering the termination questions, I do not consider it likely the father will be able to assume a responsible position in the children's lives. Clearly, there is no ongoing parent-child relationship. It is my professional opinion that it would be contrary to the children's best interest CT Page 4213 to allow further time to pass for the purpose of establishing a parent and child relationship. " Petitioner's Exhibit 15.
The language of our statutes make it clear that in assessing parents' rehabilitative prognosis, it must be viewed in the context of what is "within a reasonable time, considering the age and needs of the child". General Statutes § 17a-112 (b)(2). See also In re Luis C., 210 Conn. 157, 167, 554 A.2d 722 (1989) and In re Davon M., 16 Conn. App. 693, 548 A.2d 1350 (1988).
Given the father's lack of reasonable efforts to stay involved with his children; his failure to contact DCF, respond to its letters, or to notify it of his many addresses; his persistent failure to follow through on visitation and evaluation requests; and considering the length of time the children have already been in foster care and the lack of progress the father has made in dealing with his functional deficits, the prognosis for rehabilitation is very poor. Additionally, DCF could easily conclude that it would be futile to offer additional services under the circumstances where the father has not demonstrated much interest and is unwilling to avail himself of services. The court may conclude from his lifestyle and lack of initiative in becoming the caretaker of any of his children, that it would have been futile to provide additional supportive services to the respondents in an attempt to reunite the family. In re Kezia33 Conn. App. 12, 24, 632 A.2d 1122 (1993). "The law does not require the doing of a useless thing." Federal Finance Co. v. FormanProperties, Inc., 135 Conn. 153, 158, 62 A.2d 516 (1948). Corsinov. Grover, 148 Conn. 299, 308, 170 A.2d 267 (1961).
CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT
The father claims that under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131 et seq, DCF was obligated to make certain accommodations to him on account of his borderline mental retardation and his chronic and uncontrolled seizure disorder. This argument fails for three reasons.
1.) The conduct of the respondent is this court's focus, not the father's disability. The father elected not to involve himself with DCF services, did not keep them advised of his addresses, absented himself from the children's lives for years, and did very little to establish a relationship with his children. In reKaarlo, 44 Conn. Sup 101 (1996), affirmed, 40 Conn. App. 73,668 A.2d 1353 (1996). CT Page 4214
2.) The Federal Regulations state that "[n]othing in this part will be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity or benefit provided under the ADA or this part which such individual chooses not to accept." 28 C.F.R. § 35.130 (e)
The court finds that the father chose not to accept services from DCF.
3.) This court adopts the holding of the Wisconsin Appellate court which found that the ADA does not apply to actions for termination of parental rights. In Interest of Torrance P.,
187 W.2d 10, 522 N.W.2d 243 (1994). "The duty to make a diligent effort to provide court-ordered services is defined by TPR statutes and not the ADA. The ADA does not increase those responsibilities or dictate how those responsibilities must be discharged. . . .Thus, while [the father's] developmental disability must be considered in determining the reasonableness of the County's efforts, neither his disability nor the ADA changes the inquiry or the County's burden of proof" Id., 245-246. The court went on to hold that Congress enacted the ADA to eliminate discrimination against people with disabilities and to create causes of action for qualified people, not to change the obligations imposed by unrelated statutes. While the respondent may have a cause of action under the ADA against DCF, such a claim however may not form the basis of a defense to the termination of parental rights.
With respect to the parents' mental handicaps, it is likely that both are mildly mentally retarded. The court concludes that this alone is not sufficient to terminate their rights to their children. But where, as here, it is but one of a significant number of other factors which render the parents unable or unwilling to actively participate in a physically and psychologically healthy manner with their children or prevents them from personal rehabilitation, the court will consider all statutory grounds alleged, not withstanding the mental handicaps.
"Termination has been consistently recognized in the best interests of the child when the parent has a mental deficiency or illness which renders her unable to provide the child with necessary care." In re Nicolina T., 9 Conn. App. 598, 605,520 A.2d 639, cert. denied, 203 Conn. 804, 525 A.2d 519 (1989). In the case of In Re: Juvenile Appeal, (83-BC), 189 Conn. 66, 78-79, CT Page 4215454 A.2d 1262 (1983), the court indicated that "the legislature may properly strike the balance at the point where mental or physical deficiency, even though not involving fault, is as great as to render the parent incapable of measuring up the child's needs as those are delineated in Section 17a-43a" (presently §17a-112).
For whatever reason, the father had almost no contact with his children over the course of their nearly three years in foster care. The father was unable to make an offer of proof to the court that appropriate services could be provided which would enable him to parent his children. Indeed, the expert testimony provided by Dr. Mantell indicated that it was highly unlikely that he would ever be able to resume a responsible position in the lives of the children or to maintain a parent-child relationship with these children. There is clearly a limit on what services could be implemented in any single case and there is also a limit to the benefit that could be derived from such services. In this case there is no suggestion that services could be provided and benefits could be achieved which would bring the father to a position of responsibility in the lives of his children.
With respect to the arguments of the mother regarding the services provided to her, the court has found that the services offered to the mother were adequate, available, accessible and relevant. The services are listed in paragraph 12 of the social study, pages 41-43. The court further finds that a court ordered expectation entered on June 14, 1994, those expectations are set forth on page 36 through page 40 of the social study. In summary, the court finds that the mother failed to comply with the expectations and has failed to rehabilitate herself to a useful and constructive role as a parent for these children.
ADJUDICATION
The court finds by clear and convincing evidence that these three children have been abandoned by their mother and their father. The parents have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of their children. General Statutes § 17a-112 (b)(1). The court finds that the children have adjudged neglected children in a prior proceeding on July 8, 1994. Further, the court finds that the mother and the father have failed to achieve a degree of personal rehabilitation which would encourage the belief that the parents CT Page 4216 could, within a reasonable time, assume a responsible position in the lives of their children, considering the children's age and needs. General Statutes § 17a-112 (b)(2). Finally, the court finds that these grounds have existed for more than one year.
MANDATORY FINDINGS
Having determined that grounds for terminating the parental rights of these parents exist, the court must then consider the seven factors set forth in General Statutes § 17a-112 (d), as amended.
1. The timeliness, nature and extent of services offered orprovided the parents and children by an agency to facilitatereunion.
The court has noted the services offered to facilitate reunification as set forth in the social study, pages 41-43. The court finds that evaluations and visitation services were offered to the father and evaluations were offered to the father, although he did not participate in the evaluations nor did he exercise his right to visit with the children on more than two occasions. This court finds that it would have been futile for DCF to make further offers to the father given his lack of inclination to participate in such services.
2. Whether the DCF has made reasonable efforts to reunite thefamily pursuant to the Federal Adoption Assistance ChildWelfare Act of 1980.
The court finds DCF made heroic efforts to try to attempt to rehabilitate the mother to a useful, parental role. Its efforts were unsuccessful. The court finds that, given the father's mental or physical impairments, DCF could not provide sufficient services to rehabilitate him to a useful, parental role.
3. The terms of any applicable court order entered into andagreed upon by any individual or agency in the parent and theextent to which all parties have fulfill their obligations undersuch order.
Expectations were signed by the mother and a service agreement was signed by the father. The court finds that neither of the parents fulfilled their obligations under those orders and agreements. CT Page 4217
4. The feelings and emotional ties of the child with respectto his parents. any guardian of his person or any person whoexercises physical care, custody or control of the child for atleast one year and with whom the child has developed significantemotional ties.
The court finds that, presently, the parents and children have no parent-child relationship and the children have not displayed any strong positive feelings or emotional ties to either of the parents. The children have bonded extremely well to their current foster family and consider the family to be their emotional stability and support. The children call their foster parents "Momma" and "Poppa." The children consider themselves part of the family which includes an older foster brother, Jose. The foster family wishes to adopt all three children.[4]
 5. The age of the children.
Maria will be five in July; Alfred will be three in June; and Michael will be two in June. Michael has been in foster care his entire life. The older children have been in foster care for most of their lives. The children need permanency. A delay in permanency planning for these children will be deleterious to their well being. Neither parent has provided a plan to safely and appropriately care for the needs of these children.
6. The efforts that the parents have made to adjust theircircumstance, conduct or conditions to make it in the bestinterest of the children to return to them in the foreseeablefuture.
The court finds that neither parent has substantially altered their conduct to enable them to provide the care that these children require. Both parents are in substantially the same condition or worse than they were at the time of the initial commitment.
7. Finding regarding the extent to which a parent has beenprevented from maintaining a meaningful relationship with thechildren by the unreasonable act or conduct of the other parentof the children or the unreasonable act of any other person or byeconomic circumstances of the parent.
The court finds that no unreasonable barriers have been CT Page 4218 placed in the parents' path. DCF has worked towards reunification. The father's principal barrier has been his lack of interest and concern for the children coupled with his own mental and physical handicaps. The mother's principal barrier has been her problems with addiction and her dysfunctional personal relationships. Both parents lived within reasonable geographical proximity of DCF office in Waterbury. The children were also in foster placement within a reasonable geographic proximity. The court concludes there were no barriers placed in the way of either of the mother or the father to the performance and maintenance of a meaningful relationship with their children.
CHILDREN'S BEST INTEREST
"Our statutes and case law make it crystal clear that the determination of the child's best interests comes into play only after statutory grounds for termination of parental rights have been established by clear and convincing evidence." In re ValerieD., 223 Conn. 492, 511, 613 A.2d 478 (1992). Here, the court has found that grounds exist to terminate the parents rights to their children. The court has also considered the mandatory findings and concludes, from the totality of circumstances, that termination of parental rights is in the children's best interest. This finding is made after considering the children's sense of time, their need for secure and permanent environment, and their relationship with their foster parents. In Re: JuvenileAppeal (Anonymous), supra, 177 Conn. 667-668. See generally, J. GOLDSTEIN, A. FREUD AND A. SOLNIT, BEYOND THE BEST INTERESTS OF THE CHILD 99 (1979).
DISPOSITION
Based upon the testimony presented and the exhibits offered into evidence the court has found by clear and convincing evidence that the biological parents have abandoned their children and have failed to achieve a degree of personal rehabilitation following the adjudication of neglect in July, 1994. The court finds that these grounds have existed for a period of time which is greater than one year. The court finds based upon the testimony and evidence presented that it is in the children's best interest that the parental rights of their parents be terminated.
ORDER
CT Page 4219
Having considered the foregoing facts, it is found by clear and convincing evidence to be in the best interest of the minor children to terminate the parental rights of their biological parents so that they may be placed in adoption without further delay. It is hereby ordered that the parental rights of Iris P. and Alfred R. Sr. be terminated. It is further ordered that the Commissioner of Children and Families are appointed the statutory parent for the purpose of placing the children forthwith in adoption. The Commission is ordered to report to this court, in writing, as to the progress toward that end no later than 90 days from the date of the judgment. If adoption has not been finalized within six months from the date of judgment, the Commissioner is further ordered to submit a motion to review the plan for terminated children by that date to insure compliance with the federal law which mandates judicial review of every child in the guardianship of this state at least every twelve months.
The court commends all counsel for their vigorous and effective advocacy during the trial and for their very helpful trial briefs.
FOLEY, J.