La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
Corresponde determinar en esta ocasión si la Adminis-tración de Reglamentos y Permisos concedió correctamente unas variaciones a los parámetros de construcción del Re-glamento de Zonificación Especial del Condado.
t — i
Empresas Ferrer, Inc. (Empresas Ferrer), presentó ante la Administración de Reglamentos y Permisos (A.R.Pe.) un anteproyecto de construcción conforme al reglamento Con-dado: Reglamento de Zonificación Especial, Reglamento Núm. 3319 del Departamento de Estado de 12 de junio de 1986 (Reglamento del Condado), 23 R.P.R. see. 650.1791 et seq. Esta compañía propuso la construcción de un complejo de vivienda en dos solares colindantes que sometió a opción mediante un contrato de opción de compraventa.(1) Ambos solares tienen una configuración física regular, pero una vez agrupados, su configuración como un nuevo solar sería irregular. Empresas Ferrer solicitó, además, unas variacio-nes a las disposiciones del Reglamento del Condado, ya que *260 el desarrollo propuesto incumplía con ciertos parámetros de construcción establecidos por el mismo.(2)
Empresas Ferrer propuso la construcción de un edificio residencial multifamiliar de catorce plantas con veintiocho apartamentos de dos habitaciones cada uno, distribuidos en dos apartamentos por piso. Este ocupará los dos solares que sometió a opción, colindantes por sus respectivos patios posteriores y localizados entre las calles Luchetti y Wilson del Condado.(3) Los solares ubican dentro de los lí-mites de una Zonificación Residencial (R)(4) de acuerdo con el mapa y el reglamento de zonificación del Condado, y tienen una cabida combinada de 2,050 metros cuadrados, equivalentes a 0.5216 cuerdas. De acuerdo con el expe-diente del presente recurso, “[a]l momento de ventilarse este caso ante la ARPE aún los predios no habían sido ad-quiridos”(5) por Empresas Ferrer ni habían sido agrupados.(6)
Así las cosas, A.R.Pe. celebró una vista pública para considerar el anteproyecto y las variaciones al Reglamento del Condado solicitadas por Empresas Ferrer, donde las partes interesadas tuvieron la oportunidad de presentar *261 argumentos a favor y en contra del desarrollo. Posterior-mente, la Oficial Examinadora que presidió la referida vista rindió un informe recomendando favorablemente la aprobación del anteproyecto y las variaciones solicitadas. Concluyó, entre otras cosas, que “[l]as variaciones solicita-das por el proponente responden mayormente a la forma irregular del solar, el cual no tiene una proporción ade-cuada de ancho vs. Fondo”. (Énfasis suplido.)(7) El informe fue acogido en su totalidad por el Gerente del Centro de Servicios de A.R.Pe. y, posteriormente, la agencia emitió una Resolución en la que autorizó el anteproyecto y las variaciones solicitadas.(8)
Inconformes, la Asociación de Condominos del Condomi-nio Crowne Plaza (Asociación de Condominos), el Ledo. Salvador Antonetti Zequeira (licenciado Antonetti Zequei-ra), la Asociación de Condominos del Condominio Grand Royal y el Ledo. Arnaldo Villamil, solicitaron la revisión ante el Tribunal de Apelaciones.(9) Dicho foro confirmó la resolución de A.R.Pe. que autorizó el anteproyecto y las variaciones en controversia. Razonó que la determinación de esta agencia era razonable, ya que demostró que exa-minó y consideró la reglamentación aplicable y las objecio-nes de los opositores. Además, entendió que la determina-ción administrativa corresponde a las circunstancias que contempla el Reglamento del Condado para la concesión de variaciones, entiéndase, “la forma irregular del solar, el no verse afectadas propiedades vecinas y la armonía con los *262 objetivos y propósitos del referido reglamento”. Apéndice de la Petición de certiorari, pág. 17.
En cuanto al planteamiento de que A.R.Pe. basó su de-terminación en un solar inexistente —que aún no había sido agrupado— el foro apelativo intermedio concluyó que el Reglamento del Condado no limita la facultad de la agencia de aprobar un anteproyecto de un solar no agrupado. Coligió que un anteproyecto es una consulta que "permite la presentación de situaciones hipotéticas y de esquemas de construcción en solares no existentes que le brinda al ciudadano la certeza de que, luego de cumplir con las condiciones impuestas por la referida agencia, obtendrá el permiso de construcción”. Apéndice de la Petición de cer-tiorari, pág. 18. Añadió que en el presente caso se le per-mitió a Empresas Ferrer conocer que, una vez agrupara los solares, obtendría el permiso de A.R.Pe. para la construc-ción de su edificio. Todavía en desacuerdo, la Asociación de Condominos y el licenciado Antonetti Zequeira comparecen ante este Tribunal para solicitar la revisión de la determi-nación del tribunal apelativo.(10)
*263 Expedimos el auto. Contando con la comparecencia de las partes y estando en posición de resolver el recurso ante nuestra consideración, procedemos a así hacerlo.
rH HH
En su recurso, la Asociación de Condominos y el licen-ciado Antonetti Zequeira argumentan que A.R.Pe. aprobó y concedió incorrectamente las variaciones solicitadas por Empresas Ferrer. Alegan que Empresas Ferrer provocó la condición utilizada para justificar su solicitud de variacio-nes, autoinfligiéndose así el daño que ahora le impide de-sarrollar su proyecto como pretende. Además, sostienen que A.R.Pe. concedió las variaciones en contravención del Reglamento del Condado, sin justificarlas conforme los cri-terios establecidos para su concesión, emitiendo una reso-lución carente de análisis de los conflictos de prueba que tuvo ante su consideración y sin describir los hechos que rechazó y las razones para ello.
Por su parte, Empresas Ferrer sostiene que la determi-nación de A.R.Pe. merece gran deferencia y respeto, ya que está sustentada por evidencia sustancial que obra en el expediente administrativo. Sostiene, además, que la Aso-ciación de Condominos y el licenciado Antonetti Zequeira no han podido derrotar mediante la presentación de evi-dencia la presunción de legalidad y corrección que cobija la determinación de A.R.Pe. Veamos.
A. Antes de entrar a considerar los méritos del presente recurso, es pertinente precisar el alcance y los límites de la revisión judicial de las determinaciones o actuaciones que realizan las agencias administrativas. En esta tarea, debemos tener presente que “los tribunales tenemos el deber de fiscalizar rigurosamente las decisiones *264 de dichas agencias, para asegurar que desempeñen cabal-mente sus importantísimas funciones, y para que el País no pierda la fe en sus instituciones de gobierno”. Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 700 (2000).
La revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de los organis-mos administrativos para asegurar que éstos ejerzan sus funciones conforme a la ley y de forma razonable. Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279 (1999). Por lo general, éstas gozan de gran deferencia y respeto de parte de nuestros tribunales. Mun. San Juan v. Plaza Las Américas, 169 D.P.R. 310 (2006); Hernández, Álvarez v. Centro Unido, 168 D.P.R. 592 (2006). Lo anterior se fundamenta en la vasta experiencia y el conocimiento especializado que poseen los organismos administrativos sobre los asuntos que estatutariamente se les ha encomendado. íd.
Ahora bien, la deferencia reconocida cede ante instancias apropiadas y meritorias, como lo son: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúa arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. Vázquez Cintrón v. Banco Desarrollo, 171 D.P.R. 1 (2007); Hernández, Álvarez v. Centro Unido, supra; Mun. San Juan v. Plaza Las Américas, supra. En esencia, los tribunales no pueden imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables o ilegales, o simplemente, contrarias a derecho. Vázquez Cintrón v. Banco Desarrollo, supra.
En el ejercicio de nuestra función revisora, es importante considerar las determinaciones de hecho y conclu- *265 siones de derecho consignadas en una determinación administrativa. Mun. San Juan v. Plaza Las Américas, supra; Rebollo v. Yiyi Motors, 160 D.P.R. 69 (2004). Lo anterior permite cotejar si el organismo administrativo cumplió cabalmente su responsabilidad legal y si además fundamentó la determinación objeto de revisión. Hernández, Álvarez v. Centro Unido, supra. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir tanto los hechos proba-dos como los rechazados. Mun. San Juan v. Plaza Las Américas, supra, pág. 280. Más aún, “[l]a expresión de los fundamentos de una decisión no puede ser pro forma, y debe reflejar que la agencia ha cumplido con su obligación de evaluar y resolver los conflictos de prueba del caso ante su consideración”. Id.
Consignar adecuadamente las determinaciones de hecho y conclusiones de derecho: (1) permite que los tribunales tengan la oportunidad de revisar adecuadamente la determinación administrativa ante su consideración; (2) fomenta que los organismos administrativos adopten decisiones cuidadosas y razonadas conforme el ámbito de su autoridad y discreción; (3) ayudan a la parte afectada a entender la razón de la determinación administrativa, permitiendo así que ésta decida si solicita o no su revisión ante el foro apelativo correspondiente o si, de lo contrario, la acata; (4) promueve la uniformidad intragencial, en particular cuando el proceso decisorio institucional es adoptado por distintos miembros de un comité especial a quienes les está encomendado celebrar vistas y recibir la prueba, y (5) evita que los tribunales usurpen funciones propias de las agencias administrativas dado su conocimiento o expertise. Mun. San Juan v. Plaza Las Américas, supra; Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85 (1997); Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 281—282 (1999).
La Sección 4.5 de la Ley de Procedimiento Admi- *266 nistrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. see. 2175, estipula que las deter-minaciones de hecho de las agencias administrativas se sostendrán si están fundamentadas por evidencia sustan-cial que obre en el expediente administrativo considerado en su totalidad. Hernández, Álvarez v. Centro Unido, supra. Evidencia sustancial es “ ‘aquella evidencia rele-vante que una mente razonable podría aceptar como ade-cuada para sostener una conclusión’ ”. Hernández, Álvarez v. Centro Unido, supra, pág. 615. Véase Otero v. Toyota, 163 D.P.R. 716, 728 (2005). La aplicación de este principio evita que se sustituya el criterio del organismo administra-tivo en materia especializada por el del tribunal revisor. íd.
En cuanto a las conclusiones de derecho, la L.P.A.U. dispone que éstas pueden revisarse “en todos sus aspectos por el tribunal”. 3 L.P.R.A. see. 2175. No obstante, los tribunales deben conceder gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y los reglamentos que administran, por lo que no pueden descartar libremente las conclusiones e interpretación de la agencia, sustituyendo el criterio de éstas por el propio. Hernández, Álvarez v. Centro Unido, supra; P.C.M.E. v. J.C.A., 166 D.P.R. 599 (2005). Así, si la inter pretación de la ley o reglamento que realiza determinada agencia administrativa es razonable, aunque no sea la única razonable, los tribunales debemos concederle deferencia. Hernández, Álvarez v. Centro Unido, supra. Más aún, los tribunales podrán sustituir el criterio de la agencia por el suyo únicamente cuando no encuentren una base racional para explicar la determinación administrativa. Hernández, Álvarez v. Centro Unido, supra; Otero v. Toyota, supra.
B. En reiteradas ocasiones hemos expresado que las variaciones son una válvula de escape dentro del rígido ordenamiento de zonificación vigente en nuestra jurisdicción. Asoc. Res. Park Side, Inc. v. J.P, 139 D.P.R. *267 349 (1995). Éstas atenúan el rigor reglamentario, permi-tiendo aliviar las restricciones que regulan el disfrute de determinada propiedad cuando se demuestra que, dado cir-cunstancias especiales, la aplicación de la reglamentación vigente es irrazonable y ocasiona perjuicios a su propietario. Íd.; A.R.P.E. v. J.A.C.L., 124 D.P.R. 858 (1989). Así se evita que una reglamentación existente se convierta en un instrumento inflexible e incapaz de amoldarse a si-tuaciones extraordinarias. T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999).
Ahora bien, las variaciones, dado su carácter excepcional, no se favorecen y sólo deben concederse en situaciones realmente extraordinarias, cuando están claramente justificadas y procedan conforme a las leyes y los reglamentos aplicables. Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743 (2003); T-JAC, Inc. v. Caguas Centrum Limited, supra; Asoc. Res. Park Side, Inc. v. J.P., supra, pág. 357; A.R.P.E. v. J.A.C.L., supra, pág. 862. Ello así ya que el uso inapropiado e indiscriminado de este mecanismo “podría destruir todo nuestro esquema de zonificación y cambiar eventualmente las características de un distrito, planificado originalmente con una infraestructura para ciertos usos”. A.R.P.E. v. J.A.C.L., supra, pág. 862. Por lo anterior, “una decisión administrativa que conceda o deniegue excepciones o variaciones acorde con los Reglamentos de Zonificación debe estar debidamente fundamentada”, demostrando así la agencia que analizó los criterios estatutarios y reglamentarios aplicables a la consideración de este tipo de solicitud. (Énfasis suplido.) Vélez v. A.R.Pe., 167 D.P.R. 684, 702 (2006). Véase López v. Junta Planificación, 80 D.P.R. 646, 664 (1958).
Conforme la facultad delegada estatutariamente para implantar la política pública que le ha sido encomendada, A.R.Pe. puede conceder permisos a discreción mediante la concesión de excepciones o variaciones a los requisitos de los reglamentos de zonificación que administra. *268 Asoc. Vec. Urb. Huyke v. Bco. Santander, 157 D.P.R. 521 (2002). Uno de estos reglamentos es el de zonificación especial del Condado, aprobado por la Junta de Planificación para “establecer las normas y criterios que regirán el uso y desarrollo de[l Condado], para asegurar y fomentar la sa-lud, seguridad, orden, prosperidad y bienestar general de todos los residentes, turistas, comerciantes y usuarios del Sector”. 23 R.P.R. see. 650.1792. De acuerdo con su texto, sus disposiciones prevalecen sobre las de reglamentos ge-nerales, pero quedarán complementadas por aquellas de otros reglamentos adoptados por la Junta de Planificación, que apliquen al área donde ubique la propiedad y hasta donde sean compatibles con el asunto específicamente re-gulado por el Reglamento del Condado.(11) 23 R.P.R. see. 650.1795.
El Reglamento del Condado regula específicamente la concesión de variaciones a sus requisitos. Éste permite que tanto la Junta de Planificación como A.R.Pe. concedan va-riaciones en instancias “donde, debido a circunstancias ex-cepcionales o extraordinarias, una aplicación literal de [éste] resultase en la prohibición o restricción irrazonable del disfrute de una pertenencia o propiedad ...”. 23 R.P.R. see. 650.1851. Véase Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 695-696 (2000). Estipula además que a las agencias se les tiene que demostrar, a su satisfacción, que “ ‘la variación (concesión) aliviará un perjuicio claramente demostrable ... [o que la misma habrá de redundar] en los mejores intereses de la comunidad [y el sector]’ ”. Mun. de San Juan v. J.C.A., supra, págs. 695-696 esc. 2. De *269 acuerdo con el reglamento, las variaciones deben ser soli-citadas por el dueño de la propiedad para la que se solicita o por su representante autorizado, y A.R.Pe. o la Junta de Planificación no “considerará o hará variación (concesión) alguna en exceso de la solicitada”. 23 R.P.R. see. 650.1852.
La Sección 6.04 del Reglamento del Condado, 23 R.P.R. see. 650.1854, establece diez criterios que tienen que satis-facerse antes que la Junta de Planificación o A.R.Pe. pue-dan conceder o denegar una solicitud de variación. Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 695 esc. 2 (2000). Dicha disposición específicamente estipula lo siguiente:
No podrá autorizarse una variación (concesión), en todo o en parte, a menos que existan datos suficientes para establecer:
(A) Que circunstancias excepcionales o extraordinarias, tales como la forma irregular del solar u otras circunstancias impiden el disfrute o la utilización de la propiedad.
(B) Que debido a circunstancias excepcionales o extraordi-narias la aplicación literal de ciertos requisitos específicos de este Capítulo resultaría en una dificultad práctica o en un perjuicio innecesario no creado o atribuible al dueño de la propiedad.
(C) Que la variación (concesión) es necesaria para la preser-vación y el disfrute de un derecho de propiedad y se demuestre que la variación (concesión) aliviará un perjuicio claramente demostrable, cuyo derecho es poseído y disfrutado por otras pertenencias en el mismo distrito, el cual no afecta el bienes-tar público.
(D) Que si en la variación (concesión) se solicitara la autori-zación de un uso no permitido en el distrito de zonifícación, el uso solicitado sea compatible con el carácter esencial del distrito.
(E) Que la variación (concesión) ha de redundar en los me-jores intereses de la comunidad, municipio, o del pueblo de Puerto Rico.
(F) Que la autorización de tal variación (concesión) no afec-tará adversamente el disfrute y valor de las pertenencias cer-canas en su uso presente y para cualquier otro futuro permitido.
(G) Que la autorización de tal variación (concesión) no enca-recerá ni afectará adversamente la idoneidad, la seguridad y el funcionamiento conveniente de las facilidades públicas exis- *270 tentes o planeadas, incluyendo vías, escuelas, disposición de desperdicios y otros servicios esenciales.
(H) Que la variación (concesión) solicitada está en armonía con los propósitos generales de este Capítulo y con cualquier plan de uso de terrenos adoptado para el área.
(I) Que la autorización de tal variación (concesión) es consis-tente con el documento de Objetivos y Políticas Públicas del Plan de [Uso de] Terrenos, el Plan de Desarrollo Integral de Puerto Rico, el Programa de Inversiones de Cuatro Años y con la conservación y preservación de recursos naturales e históricos.
(J) Que el peticionario, a su vez, está en disposición de acep-tar las condiciones y requerimientos adicionales a los requisi-tos reglamentarios que la Junta o la Administración le im-ponga para beneficio o protección del interés público. Id.
Al momento de considerar una solicitud de variación conforme el Reglamento del Condado, tanto la Junta de Planificación como A.R.Pe. podrán celebrar discrecional-mente vistas públicas donde se dé la oportunidad a las partes interesadas de presentar su posición en cuanto a la concesión de la variación. 23 R.P.R. see. 650.1853. Lo anterior permitirá que la Junta de Planificación o A.R.Pe. ten-gan la oportunidad de “hacer las determinaciones de he-chos y conclusiones de derecho descansando en la prueba aportada en la vista que justifique su determinación”. Id.
C. Este Tribunal no ha vacilado en invalidar la concesión de variaciones a los requisitos de reglamentos de zonificación justificadas por condiciones creadas por el propio proponente de la variación y que impiden el uso pretendido de la propiedad para la que se solicita. Esto se fundamenta en la doctrina de la autoinflicción del daño, adoptada en nuestra jurisdicción en Asoc., C.D. Octubre v. J.A.C.L., 116 D.P.R. 326, 334 (1985). Como regla general, esta norma “impide la solicitud y concesión de una variación en casos en que el promovente —conociendo las limitaciones impuestas por los requisitos de zonificación— se coloca voluntariamente en una posición que le ocasiona perjuicio irrazonable”. Asoc. Res. Baldrich, Inc. v. J.R de RR., 118 D.P.R. 759, 772 (1987). Véanse, además: Asoc. *271 Vec. Urb. Huyke v. Bco. Santander, supra, págs. 555-556; Fuertes y otros v. A.R.Pe., 134 D.P.R. 947, 959 (1993); A.R.P.E. v. J.A.C.L., supra, pág. 865. Cabe señalar que esta norma fue incorporada al texto del Reglamento del Con-dado aplicable al presente recurso.(12)
La doctrina de la autoinflicción del daño aplica a cualquier promovente de una variación independientemente de si su conocimiento de la restricción sobre la propiedad es real o constrictivo. Asoc. Vec. Urb. Huyke v. Bco. Santander, supra; Fuertes, Guillermety v. A.R.Pe., 130 D.RR. 971 (1992); A.R.P.E. v. J.A.C.L., supra. Así, hemos expresado que al adquirir la propiedad, se asume que su nuevo dueño la obtuvo con conocimiento de las limitaciones a las que estaba sujeta, por lo que no puede entonces premiársele permitiéndole que la utilice para un fin contrario a tales limitaciones. Asoc. Vec. Urb. Huyke v. Bco. Santander, supra. De hecho, hemos expresado que el conocimiento previo de estas restricciones debilita sus posibilidades de éxito en los tribunales. A.R.P.E. v. J.A.C.L., supra.
Ahora bien, en nuestra jurisdicción no hemos considerado la aplicación de la doctrina de la autoinflicción del daño a situaciones donde un adquiriente de varios solares los agrupa para que éstos formen un nuevo solar con dimensiones irregulares, permitiéndole así justificar una solicitud de variación. Ante este tipo de situaciones, la jurisprudencia norteamericana y los comentaristas han determinado que se autoinflinge un daño que no puede dar base a la concesión de una variación aquel quien, con el propósito de justificarla deliberadamente, configura su propiedad para que tenga forma irregular. 7 Williams Am *272 Land Plan Sec. 151:3, pág. 179 (ed. rev. 2003) (Williams and Taylor).(13) Véanse, además: Appeal of Lally, 404 Pa. 174 (1961); Corsino v. Grover, 148 Conn. 299 (1961); In the matter of Germaine M. Thomas, et al. v. Board of Standards and Appeals of the City of New York, et al., 290 N.Y. 109, 48 N.E.2d 284 (1943). En este tipo de situaciones se entiende que un desarrollador intencionalmente crea un solar de dimensiones que le permiten argumentar que su-fre un daño si se le aplica literalmente la reglamentación de zonificación vigente, para tratar de lograr la obtención de ganancias por el desarrollo de su propiedad si se le concede la variación. Williams and Taylor, supra, pág. 227.(14) Ese daño que sufre el desarrollador no puede ser un factor a considerar al momento de determinar si se concede o no la variación solicitada. Cabe señalar que toda alegación de esta modalidad de daño autoinfligido debe estar funda-mentada por evidencia que demuestre que la forma de una propiedad, utilizada para justificar una variación fue deli-beradamente creada por el promovente de ésta. Ferris v. City of Austin, 150 S.W.3d 514 (2004).
En vista de lo discutido anteriormente y de la particular situación que consideramos en esta ocasión, entendemos prudente adoptar en nuestra jurisdicción la modalidad de daño autoinfligido que hemos discutido. Así, resolvemos que el que deliberadamente configura su propiedad para que tenga una dimensión que le permita justificar una solicitud de variación, se autoinflige un daño que no puede ser considerado al momento de evaluar dicha solicitud.
*273 III
Habiendo expuesto y discutido la normativa aplicable al caso de autos, pasamos a resolver la controversia ante nuestra consideración.
Como adelantáramos, la Asociación de Condominos y el licenciado Antonetti Zequeira argumentan que A.R.Pe. aprobó y concedió las variaciones solicitadas por Empresas Ferrer incorrectamente. En primer lugar, sostienen que Empresas Ferrer provocó la condición utilizada para justi-ficar su solicitud de variaciones, autoinfligiendo así el daño que ahora le impide desarrollar su proyecto como pretende. Además, aducen que A.R.Pe. concedió las variaciones en contravención del Reglamento del Condado, sin justificar-las a la luz de los criterios establecidos para su concesión y emitiendo una resolución carente de análisis de los conflic-tos de prueba que tuvo ante su consideración y sin descri-bir los hechos que fueron rechazados y las razones para ello.
Por su parte, Empresas Ferrer alega que la determina-ción de A.R.Pe. merece deferencia y respeto por parte de este Tribunal, ya que está sostenida por evidencia sustan-cial que obra en el expediente administrativo. Sostiene que la Asociación de Condominos y el licenciado Antonetti Ze-queira no han presentado evidencia que derrote la presun-ción de legalidad y corrección que cobija a la determinación de A.R.Pe. en controversia.
Empresas Ferrer sometió a opción la compra de dos so-lares colindantes por sus patios posteriores, localizados en-tre la Calles Wilson y Luchetti del Condado. En estos te-rrenos, una vez agrupados, propone la construcción de un complejo de vivienda multifamiliar. Dado que el proyecto propuesto excede varios parámetros de construcción esta-blecidos por el Reglamento del Condado, Empresas Ferrer solicitó unas variaciones a estos parámetros. Específica-mente, Empresas Ferrer solicitó variaciones en la densi- *274 dad, la altura exterior del edificio, sus patios laterales ex-teriores e interiores y en el área bruta del piso. Esta solicitud se presentó conforme la Sección 6.04 del Regla-mento del Condado, supra, que establece los criterios que tienen que satisfacerse antes que A.R.Pe. o la Junta de Pla-nificación concedan variaciones a los requisitos reglamentarios. 23 R.P.R. see. 650.1854; Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 695 esc. 2 (2000).
Luego de celebrar vistas públicas y de escuchar a los proponentes y opositores del proyecto, A.R.Pe. aprobó el anteproyecto presentado por Empresas Ferrer y las varia-ciones a los parámetros de construcción del Reglamento del Condado solicitadas por la compañía. En su resolución, la agencia se limitó a consignar como determinaciones de he-cho la descripción del proyecto a desarrollarse, las varia-ciones solicitadas, la dirección física y el número de pisos de los edificios colindantes, los endosos con los que contaba el proyecto, la fecha de celebración de la vista pública ante el oficial examinador, la recomendación favorable de éste a la aprobación del anteproyecto y la concesión de las varia-ciones solicitadas.
Del expediente del presente recurso se desprende que los opositores a la concesión de las variaciones solicitadas presentaron un informe preparado por su perito donde se argumentó que las características del proyecto de Empre-sas Ferrer no se ajustaban a la reglamentación vigente y que A.R.Pe. violaba la política pública vigente en materia de planificación urbana.(15) De hecho, Empresas Ferrer contestó estos señalamientos en un segundo informe pre-sentado ante A.R.Pe.(16) No obstante lo anterior, no se re-fleja de forma alguna en la resolución de A.R.Pe. se que se consideró y resolvió los conflictos de prueba que evidente-mente tuvo ante su consideración la agencia ni mucho me- *275 nos se describen los hechos que durante el procedimiento administrativo fueron probados o rechazados. Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 280 (1999). Esta situación obvia sin lugar a dudas la norma de que “la expresión de los fundamentos de una decisión no puede ser pro forma” y que ésta “debe reflejar que la agencia ha cumplido con su obligación de evaluar y resolver los conflictos de prueba del caso ante su consideración”. Id.
La resolución emitida por A.R.Pe. tampoco hace referen-cia a disposiciones específicas de la Sección 6.04 del Regla-mento del Condado, que establece los criterios que se tienen que satisfacer antes que A.R.Pe. conceda una variación. 23 R.P.R. see. 650.1854. De hecho, una lectura de las escuetas conclusiones de derecho de la resolución recurrida demues-tra que A.R.Pe. justificó la concesión de las variaciones so-licitadas por Empresas Ferrer simplemente en la forma irregular del solar, la entrada y salida de vehículos desde el edificio proyectado, incluyendo la salida de taxis, y las características y el valor de los edificios aledaños. En esen-cia, estas escuetas conclusiones de derecho evidencian que la agencia no consideró la solicitud de variaciones presen-tada por Empresas Ferrer como correspondía según el Re-glamento del Condado.
Ante lo que aparentaba ser el fundamento principal utilizado por Empresas Ferrer para justificar la solicitud de variaciones que presentó ante A.R.Pe. —entiéndase, la forma irregular del solar creada por la futura agrupación de los dos predios de terreno que opcionó la compañía — (17) esta agencia debió considerar en primer lu- *276 gar los méritos de esta justificación. La agencia no podía obviar que en nuestra jurisdicción no procede “la solicitud y concesión de una variación en casos en que el promovente —conociendo las limitaciones impuestas por los requisitos de zonificación— se coloca voluntariamente en una posi-ción que le ocasiona peijuicio irrazonable”. Asoc. Res. Baldrich, Inc. v. J.P. de P.R., supra, pág. 772. Véanse, además: Asoc. Vec. Urb. Huyke v. Bco. Santander, supra; Fuertes y otros v. A.R.P.E., supra; A.R.P.E. v. J.A.C.L., supra. Como indicáramos, una modalidad de lo anterior resulta ser cuando el promovente de una variación deliberadamente configura las dimensiones o la forma de un predio de te-rreno de forma tal que esta situación sirva para justificar la concesión de las variaciones que solicita para la propie-dad, tál y como ocurrió en este caso. Williams and Taylor, supra. Véanse, además: Appeal of Lally, supra; Corsino v. Grover, supra; In the matter of Germaine M. Thomas, et al. v. Board of Standards and Appeals of the City of New York, et al., supra. De hecho, el Reglamento del Condado adopta estos principios al disponer que podrán concederse varia-ciones a sus requisitos si existen datos suficientes para es-tablecer “[q]ue debido a circunstancias excepcionales o ex-traordinarias la aplicación literal [del Reglamento] resultaría en una dificultad práctica o en un perjuicio in-necesario no creado o atribuible al dueño de la propiedad”. (Énfasis suplido.) 23 R.RR. sec. 650.1854(B).
A.R.Pe. tenía conocimiento de que la forma irregular del solar donde se desarrollaría el proyecto fue deliberada-mente creada por Empresas Ferrer. Dicha irregularidad del solar sirvió como justificación para la solicitud de va-riaciones, pues la aplicación literal de las disposiciones re-glamentarias dificultaría el desarrollo de la propiedad. Memorial Explicativo, Apéndice de la Petición de certiorari, pág. 67. Ante esta situación, A.R.Pe. no podía considerar el perjuicio que causaba la irregularidad del solar al desarro-llador como fundamento para conceder la variación, ya que *277 esta condición del solar fue deliberadamente creada por Empresas Ferrer para justificar su solicitud de variaciones y, a su vez, acomodar en el predio del terreno en controver-sia el proyecto de construcción que pretende desarrollar. La agencia debía considerar únicamente los demás crite-rios que dispone el Reglamento del Condado para la conce-sión de variaciones.
No obstante lo anterior, la agencia no procedió de tal forma. Como ya advertimos, la resolución emitida por A.R.Pe. no hace referencia a las disposiciones específicas de la Sección 6.04 del Reglamento del Condado, supra, que establece los criterios que se tienen que satisfacer antes que la agencia conceda una variación. Por el contrario, jus-tificó la concesión de las variaciones solicitadas por Empre-sas Ferrer simplemente en la forma irregular del solar —factor que no podía considerar— la entrada y salida de vehículos desde el edificio proyectado, incluyendo la salida de taxis, y las características y el valor de los edificios aledaños. En fin, A.R.Pe. no evaluó la solicitud de variacio-nes presentada por Empresas Ferrer según lo exige el Re-glamento del Condado.
Definitivamente, estamos ante una determinación ad-ministrativa deficiente que no nos permite otorgar la defe-rencia que generalmente le concedemos a este tipo de de-terminaciones administrativas. Las determinaciones de hecho y conclusiones de derecho consignadas en la Resolu-ción de A.R.Pe., al igual que el expediente administrativo, no permiten la conclusión en el sentido de que las variacio-nes concedidas cumplen con los criterios para la concesión de éstas que establece la Sección 6.04 del Reglamento del Condado. Lo anterior sin lugar a dudas es contrario a la norma establecida por este Tribunal, de que “una decisión administrativa que conceda o deniegue excepciones o va-riaciones acorde con los Reglamentos de Zonificación debe estar debidamente fundamentada”, así la agencia demues-tra que analizó los criterios estatutarios y reglamentarios *278 aplicables a la consideración de este tipo de solicitud. Vélez v. A.R.Pe., supra, pág. 702; López v. Junta de Planificación, supra.
Permitir actuaciones como las del presente caso sería dejar la puerta abierta para que desarrolladores utilicen como subterfugio la forma irregular de un solar delibera-damente creada para fundamentar una solicitud de varia-ciones y la eventual construcción de estructuras con dimensiones no toleradas por la reglamentación vigente.
IV
Por los fundamentos anteriormente discutidos, se re-voca la determinación del Tribunal de Apelaciones que con-firmó la Resolución emitida por A.R.Pe., mediante la cual autorizó el anteproyecto y las variaciones en controversia.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez disintió sin opi-nión escrita. El Juez Presidente Señor Hernández Denton se inhibió. El Juez Asociado Señor Fuster Berlingeri no intervino.

 Conforme este contrato, los dueños de las propiedades se comprometieron a permitirle la presentación del anteproyecto a Empresas Ferrer, Inc. (Empresas Ferrer). Éstos autorizaron la referida presentación mediante una carta de 29 de noviembre de 2001. Apéndice de la Petición de certiorari, págs. 91 y 93.

 En el Memorial Explicativo que presentó Empresas Ferrer como parte de su solicitud de anteproyecto, solicitó la concesión variaciones argumentando que éstas “están directamente relacionadas con la configuración inadecuada de la propiedad (Énfasis suplido.) Apéndice de la Petición de certiorari, pág. 66. Además, en el Memo-rando de Derecho que presentó ante la Administración de Reglamentos y Permisos (A.R.Pe.) durante la consideración de su anteproyecto, expresó que las variaciones solicitadas responden a la forma irregular del solar. Véase Memorando de Derecho de Empresas Ferrer, Apéndice de la Petición de certiorari, pág. 202. Más aún, en res-puesta a la comparecencia de la perito de los peticionarios, Empresas Ferrer presentó un documento donde expresó que el solar “existe como tal desde hace muchos años con su forma irregular”. Apéndice de la Petición de certiorari, pág. 214.

 De acuerdo con la Resolución de A.R.Pe., el complejo de vivienda tendríá acceso hacia las calles Luchetti y Wilson del Condado. Apéndice de la Petición de certiorari, pág. 54.

 El reglamento de zonificación especial del Condado dispone que una Zona Residencial (R) “se establece para clasificar áreas dedicadas exclusivamente al uso residencial”. 23 R.P.R. sec. 650.1802(C).

 Alegato de Empresas Ferrer presentado ante el Tribunal de Apelaciones, pág. 13, en Apéndice de la Petición de certiorari, pág. 595.

 íd., pág. 585.

 Informe de Vista Administrativa, Relación del Caso, presentada por la Oficial Examinadora, Apéndice de la Petición de certiorari, pág. 604.

 En su resolución, A.R.Pe. consignó como una conclusión de derecho que
“[l]as variaciones solicitadas por el proponente responden mayormente a la forma irregular del solar, el cual no tiene una proporción adecuada de ancho vs. Fondo. La aplicación literal del reglamento crearía una restricción irrazonable al desarrollo de este proyecto que tratando de cumplir por la densidad máxima permi-tida necesariamente conlleva las variaciones solicitadas.” (Énfasis suplido.) Conclu-sión de derecho núm. 10 de la resolución de A.R.Pe., Apéndice de la Petición de certiorari, pág. 56.

 A estas partes se les permitió participar en el procedimiento ante A.R.Pe. como interventores.

 Los peticionarios aducen que dicho foro incurrió en los errores siguientes:
“Primer Error. ERRÓ EL TRIBUNAL DE APELACIONES AL VALIDAR LA DETERMINACIÓN DE LA ARPE AUTORIZANDO MÚLTIPLES VARIACIONES AL ANTEPROYECTO A BASE DE QUE EL SOLAR ERA ‘IRREGULAR’, DIVOR-CIÁNDOSE DE LA REALIDAD DE QUE EMPRESAS PERRER PRETENDIÓ AGRUPAR DOS SOLARES PERFECTAMENTE REGULARES, POR LO QUE ÉSTA SE AUTOINFLIGIÓ UN DAÑO.
“Segundo Error ERRÓ EL HONORABLE TRIBUNAL DE APELACIONES AL VALIDAR LA DETERMINACIÓN DE LA ARPE AL AUTORIZAR UN PROYECTO RESIDENCIAL MULTIFAMILIAR QUE CONLLEVA VARIACIONES, QUE NO FUERON JUSTIFICADAS, NI CUMPLEN CON LOS CRITERIOS DISPUESTOS EN LA SECCIÓN 6.04 DEL REGLAMENTO DE ZONIFICACIÓN ESPECIAL DEL CONDADO.
“Tercer Error: ERRÓ EL HONORABLE TRIBUNAL DE APELACIONES AL CONFIRMAR LA DETERMINACIÓN DE LA ARPE, LA CUAL AUTORIZÓ UN PROYECTO QUE CONLLEVA VARIACIONES BASÁNDOSE EN LAS CARACTE-RÍSTICAS DE EDIFICIOS CERCANOS, CONSTRUIDOS BAJO UNAREGLAMEN-TACIÓN ANTERIOR, VIOLANDO LA POLÍTICA PÚBLICA PLASMADA EN LAS DISPOSICIONES DEL REGLAMENTO DE ZONIFICACIÓN DEL CONDADO, VIGENTE.
“Cuarto Error ERRÓ EL TRIBUNAL DE APELACIONES AL VALIDAR LA DETERMINACIÓN DE LA ARPE NO EMPECE A QUE DICHA RESOLUCIÓN CA-RECE DE ANÁLISIS E IGNORA LOS CONFLICTOS DE PRUEBA EN EL CASO; *263 NO DESCRIBE LOS HECHOS QUE FUERON RECHAZADOS Y LAS RAZONES QUE TUVO LA AGENCIA RARA ELLO.” Petición de certiorari, pág. 9.

 “El Reglamento del Condado ... tiene primacía sobre el Reglamento [de Planificación] Núm. 4 no solamente por ser un reglamento especial sino también porque sus disposiciones fueron establecidas con el propósito de atender los proble-mas específicos que son particulares al área del Condado. Por ende, para conceder variaciones en un proyecto en el área del Condado hay que atenerse en primer lugar a las disposiciones que [el reglamento Condado: Reglamento de Zonificación Especial, Reglamento Núm. 3319 del Departamento de Estado de 12 de junio de 1986 (Reglamento del Condado), 23 R.P.R. see. 650.1791 eí seg.,] establece sobre las dis-puestas en el Reglamento Núm. 4, que es un reglamento general.” Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 696-697 (2000).

 El Reglamento del Condado establece, en su Sección 6.04, que no se podrá conceder variaciones a menos que existan datos suficientes para establecer
“(B) Que debido a circunstancias excepcionales o extraordinarias la aplicación literal de ciertos requisitos específicos de este Capítulo resultaría en una dificultad práctica o en un perjuicio innecesario no creado o atribuible al dueño de la propiedad.” (Énfasis suplido.) 23 R.RR. sec. 650.1854(B).

 "Qf course, if an odd-shaped lot is deliberately created in order to have a situation where a variance would be appropriate, this ranks as self-created hardship and does not provide basis for a variance.”

 “[Situation arises when, without any violation of law, a developer consciously creates a difficult situation which may serve as a basis for a finding of hardship and so for a variance, creating an opportunity for a great return from the land.”

 Análisis del Anteproyecto Núm. 01AA2-CET00-05524, Apéndice de la Peti-ción de certiorari, pág. 231.

 Apéndice de la Petición de certiorari, pág. 206.

 Ya habíamos señalado que en el Memorial Explicativo que presentó Empre-sas Ferrer como parte de su solicitud de anteproyecto, la compañía solicitó las varia-ciones argumentando que éstas “están directamente relacionadas con la configura-ción inadecuada de la propiedad ...” (Énfasis suplido.) Apéndice de la Petición de certiorari, pág. 66. Además, habíamos indicado que en el Memorando de Derecho que Empresas Ferrer presentó ante A.R.Pe. durante la consideración de su anteproyecto, expresó que las variaciones solicitadas responden a “que el solar del presente proyecto es uno de forma irregular”. (Énfasis suplido.) Memorando de Derecho de las Empre-sas Ferrer, Apéndice de la Petición de certiorari, pág. 202.